**Frank JOHNS, Petitioner-Appellant,**

v.

**E. P. PERINI, Superintendent, Marion Correctional Institution, Respondent-Appellee.**

No. 71–1876.

United States Court of Appeals, Sixth Circuit.

June 21, 1972.

John W. Eilers, Jr., Paxton & Seasongood, Cincinnati, Ohio (Court appointed) on brief for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, on brief for respondent-appellee.

Before WEICK and McCREE, Circuit Judges, and FEIKENS,* District Judge.

McCREE, Circuit Judge.

We consider for the second time Johns' appeal from dismissal of his petition for a writ of habeas corpus. It presents for our determination the constitutional fairness of the proceedings which resulted in the imprisonment of this 40 year old man with no previous criminal conviction for the term of 30 to 60 years for the sale of $15 worth of marijuana.[1] We conclude that the writ should issue.

After consideration of the issues raised in the earlier appeal, we remanded the case to the District Court for fur-

ther proceedings, with instructions particularly to examine the facts relevant to the contention that Johns had been denied the effective assistance of counsel. Johns v. Perini, 440 F.2d 577 (6th Cir. 1971). We sought to determine whether Johns had been prejudiced by his attorney's failure to give the statutorily required three-day notice that he intended to rely upon an alibi defense.[2] We concluded, 440 F.2d at 579, that

It [was] not clear whether defense counsel made a tactical decision not to introduce the documentary evidence or whether he was precluded from doing so because he had neglected to give the statutory notice. In the latter event, since this was appellant's only defense, issuance of the writ would be dictated by this court's decision in Schaber v. Maxwell, 348 F.2d 664 (6th Cir. 1965).

We expressly did not preclude consideration by the District Court of the other issues presented in that appeal which we did not discuss.

Those issues included appellant's assertion that his trial was fundamentally unfair because the trial court admitted testimony which indicated that he had participated, in 1959, more than five

---

* The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Johns was indicted by the State of Ohio in six counts for the possession, possession for sale, and sale of marijuana on two occasions, November 6 and 30, 1964, in violation of Ohio Rev.Code §§ 3719.09, 3719.20(A), 3719.20(B). Counts one through three, charging the commission of the offenses on November 6, were dismissed because the evidence of their commission was insufficient. Count four, charging possession on November 30, was nolle prossed as subsumed by count five which charged possession for sale on that date.

A jury convicted appellant on counts five and six, of possession for sale and sale of the same marijuana on November 30. The trial judge sentenced him to serve consecutively the 10 to 20 year and 20 to 40 year sentences provided by statute for those offenses. Ohio Rev.Code § 3719.99(D), (F). Johns thereafter

sought relief from his conviction through all available state-court procedures. In 1969 he petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. That court first denied the writ without granting an evidentiary hearing, and Johns appealed to this court.

2. Ohio Rev.Code § 2945.58 provides:

Whenever a defendant in a criminal cause proposes to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to claim such alibi. Notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi.

years before the transaction for which he was convicted, in the sale of three cigarettes which *may* have contained marijuana. He was never arrested or charged with any offense in connection with that incident. In his first appeal to this court, Johns also argued that, even accepting arguendo the facts asserted by the State, he could not constitutionally be punished for both sale and possession for sale of the same marijuana.[3]

Central to the effective assistance of counsel issue is the question whether counsel's failure to give the notice of alibi prevented the effective presentation of that defense. As we stated in our earlier opinion in this case:

In this respect, we observe that the trial transcript contains repeated frustrating instances when the trial court, upon the stating of an objection, invited counsel to the bench for a side-bar conference and did not thereafter announce his ruling on the objection. The reader must accordingly infer from subsequent proceedings what, if any, determination was made. Unfortunately, appellant's contention that he was denied the effective assistance of counsel is obfuscated by such an episode.

The state's evidence indicated that the alleged sale took place in the vicinity of the Grapevine Tavern in Cleveland, Ohio after 11:00 p. m. on November 30, 1964. Appellant testified that he was employed as a cafeteria worker in an automobile factory on the evenings of November 30, December 1, and December 2, 1964 and that he was at work by 11:00 p. m. on those evenings.

. . . . . .

It appears that the prosecuting attorney had no objection to Johns' testifying about his employment, but that he vigorously opposed any attempt to buttress the claim of alibi by employment records or other means. It is unlikely that a jury would credit the unsupported alibi testimony of a defendant when that testimony, as in this case, merely contradicted the testimony of two witnesses for the prosecution who had identified Johns as the seller of the marijuana.

*Id.* at 578–579. Defense counsel attempted to support Johns' testimony by informing the jury that Johns had a pay stub indicating his employment, but the prosecuting attorney's objection to testimony about the stub was sustained:

"*Q* [by defense counsel]: How do you know you worked there on the 30th of November—

*Mr. Lipold* [Prosecuting Attorney]: Your Honor, at this time I would like to approach the bench.

*The Court*: Surely.

(Thereupon discussion was had between the court and counsel off the record and out of the hearing of the jury.)"

Transcript at 224–25. Without further record comment by either the trial judge or counsel, direct examination continued and the following colloquy occurred:

"*Q* Now, how do you know you were there on those three days?

*A* I have my pay stub in my pocket.

*Q* May I see it please?

*Mr. Lipold*: Your Honor, again I am going to object.

*Mr. Milano*: I am not offering anything.

*Mr. Lipold*: I am still going to object and I would like to be heard on this.

*The Court*: All right, if counsel will approach the bench.

---

3. Appellee now asserts, apparently for the first time, that appellant has not presented the double punishment issue in the state courts. The court below, after the evidentiary hearing, issued an oral opinion denying the writ. Although he made no finding that appellant had failed to exhaust his state remedies, the court refused to consider the double punishment issue.

(Thereupon discussion was had between the court and counsel off the record and out of the hearing of the jury.)"

Transcript at 225–26. No further attempt was made to buttress appellant's assertion that he was at work at the time of the alleged offense, although there are documents of record which would lend support to the alibi. *Id.* at 579. It was this colloquy which occasioned our remand order to inquire into the effect of the failure to give notice of alibi.

It now appears that employment records corroborative of the alibi were available to defense counsel. At the hearing on remand, it was shown that appellant's employee history form and other records which have been maintained by his former employer fully support his testimony that he had been employed as a cafeteria worker beginning on November 30, 1964, the date of the alleged sale. The records also indicate, as he had testified at trial, that his work schedule would have required his presence at work at the critical hour, and that he worked a total of 24 hours on three different days during the week beginning on November 30. However, these records produced at the evidentiary hearing do not indicate on which days of that week he worked, and company time cards which indicated specific days worked are routinely destroyed after five years and are likely now unavailable.

At the hearing below, defense counsel's recollection of his reasons for having failed six years ago to introduce documentary evidence of appellant's employment was understandably vague. He did recall that the prosecutor had offered to allow Johns to plead guilty to fewer than all the offenses with which he had been charged:

Q Now you mentioned the Detective Mack whose first name is Bosie?

A Bosie Mack, yes sir.

Q And you mentioned talking to him concerning the alibi?

A Well, no I didn't say concerning the alibi. I talked to him just in general. He and I—I would say we are close friends. He was a narcotics agent for many years with the Detective Bureau, but he is no longer with the Narcotics Squad. Again, just from recollection what usually happens before you can get what is referred to in the vernacular as a deal, you have to get an okay from the Narcotics Squad. I am sure I discussed that with Mr. Mack along with the County Prosecutor.

.    .    .    .    .    .

Like with a 6-count indictment what would or may have happened is that they may have offered two possession and maybe one possession for sale. I am sure they offered at least that, but whether or not it was possession or possession for sale I don't recall that, but there were many discussions and discussions in the chambers prior to going to trial itself.

Counsel also remembered that he had intended to rely upon an alibi defense:

Q When you went to trial did you go to trial with any intent to submit at trial the alibi defense?

A Yes.

Q Then can you explain to the Court why you did not file the three-day notice required by law?

A Well, perhaps I can, I will do it the best I can. I should have filed it three days prior to the setting of the trial date. Docket is so crowded. We were summoned to [the judge's] room in this particular case. I explained to the judge that I can't go to trial because I haven't filed it, I knew I should have, but I didn't. He said he would kick it over for three days to give me the time. Al Lipold the prosecutor in this case said, "Don't kick it over, we have witnesses here. If you have an alibi defendant, we'll allow it in."

Q Are you stating that you went into trial with the intent of submitting

the alibi, but that you had no other witnesses other than the defendant Johns as an alibi?

A Again I am not clear—I know Mr. Johns told me, either the day of trial or the day before, or the day end of trial, I can't recall what, he had a gentleman he could say that, something to the effect he had a slip that shows he worked those days.

Again I contacted this someone whose name I just don't know and was advised that all they could say was he was there for 24 hours that week, and he did take a physical examination as to testify as to his being there at the time he was supposedly in front of the bar here, they couldn't say that specifically. I felt it would be—I don't know what I felt right then at that moment, but I used no one else.

Counsel finally concluded that alibi evidence had been excluded not because of the failure to give notice but on the ground that the judge regarded it as irrelevant:

Q Now do you recall that when you attempted or when you questioned him about the pay stub and you asked to see it that Mr. Lipold made an objection, and then you and Mr. Lipold approached the bench?

A I vaguely recall something about the stub not being admitted into evidence.

Q There was some discussion between the trial judge, you and Mr. Lipold concerning the purpose or the introduction of the stub?

A Yes sir.

Q Do your recall the judge's impression as to the admissibility of this stub?

A Again it is something that I don't do anymore, but we all used to go up to the side bar and have a discussion off the record, but I never do it anymore, I haven't done it for many, many years.

My recollection is we talked about the stub, and there was an argument that it wasn't really relevant because it didn't show when he was there, but it only showed he worked a certain amount of hours that week. And the judge said, "We're not going to allow that in."

THE COURT: The judge said what?

THE WITNESS: We won't let it in—the pay stub.

Q (By Mr. Conway) He did not make a formal ruling however?

A Depending on what a formal ruling is. He just said no.

THE COURT: Did he state his reason for not allowing it in?

THE WITNESS: He didn't feel it was relevant again, Judge, that is my recollection.

In going back and talking about the alibi, and nothing is in the record where we had agreed that the alibi would come in, but he allowed all this testimony in as to the alibi. When this situation arose he overruled the admission or the offering of this particular evidence because he felt it wasn't relevant.

THE COURT: He didn't disallow it because of your failure to comply with the three-day written notice?

THE WITNESS: No Sir.

.  .  .  .  .  .

THE COURT: The judge concluded that the pay stub had no direct, contained no direct evidence of his presence on November 30 at 11:00 o'clock?

THE WITNESS: Well, Judge, I think you have it reversed, and again I am questioning back. I think this was discussed, the pay stub—

THE COURT: You saw the pay stub at that time?

THE WITNESS: Yes Sir.

THE COURT: And the judge saw it?

THE WITNESS: I think before that, Judge, before this came up in the trial of the lawsuit itself in front

of the jury, I think there was discussion prior to that about the pay stub where the judge said he won't admit it. I think I was trying to get across to the jury that he had a pay stub.

THE COURT: The judge refused to permit an offering to the jury because in his opinion it had no direct relevance?

THE WITNESS: That is my recollection.

THE COURT: (Continuing) to the particular hour and day?

THE WITNESS: Yes Sir.

THE COURT: He was of the opinion that to offer such a stub would be improper?

THE WITNESS: That is my recollection, Your Honor, yes Sir.

THE COURT: That is the offer and the acceptance of such a stub would be improper.

That is the only documentary evidence, is it, that you at any time saw during or prior to trial of the employment of the defendant at this cafeteria on those three days?

THE WITNESS: Yes Sir.

THE COURT: And you were of the opinion after discussion with an employee at the cafeteria that there would be no documentary evidence there that would benefit you and your client in showing employment on November 30, at 11 p. m.?

THE WITNESS: Yes Sir.

■ The burden of the District Court's oral opinion was concerned with the question of the effective assistance of counsel. He correctly stated that not every mistake of judgment or misconception of law made by defense counsel will deprive an accused of his constitutional right but that the test is whether that which was or was not done made the proceedings a farce and a mockery of justice, shocking to the conscience of the court. Holnagel v. Kropp, 426 F.2d 777 (6th Cir. 1970). Then he found that the trial judge had not refused to admit the pay stub because the three-

day notice had not been given, but, instead, because it only reflected that petitioner had worked during the week of November 30, and it did not show that he had worked on that particular night. Apparently, the District Judge regarded defense counsel's failure to file the notice of alibi as harmless because he also found that the lawyer

apparently knows his way around. He testified that in this case when he decided to defend on the question of an alibi, on the point of an alibi, that he called the proper person at a cafeteria where the defendant had said that he had worked on the 30th day of November at about 11 P.M., and he found that from a review of the records there by, apparently the person contacted knew the records, that the record had no indication of showing that this defendant worked there at that particular hour and day. He had been there in the morning, and he had taken, as I recall, a physical examination at that time, but there is no case that at 11:00 o'clock that evening of the 30th of November that he was present there instead of being present as the officers place him at this cafe.

I don't believe that I could say that this lawyer representing him, his own lawyer was deficient when he went no further and did not go out and personally substantiate what he had learned over the telephone.

If these facts were established by the record, we would agree with the District Judge's conclusion, but they are not.

Defense counsel, who was understandably defensive of his professional reputation in light of the claim of ineffective assistance of counsel, testified that he did not subpoena the records of Johns' employer because

I recall him showing me something that indicated he put in, I thought, 40 hours, but this morning my recollection is 24 hours during the week involving this particular situation. I discussed it with Bosie Mack who was the narcotics man handling it. I dis-

cussed it with someone whom I can't recall, who said they certainly couldn't say he was there at a specific time, but I could see their records indicating he worked 24 hours that particular week.

. . . . . .

Q Did you check with the employer to find out if there was evidence that he had in fact had a physical examination on November 30, 1964?

A Whether or not I checked with the employer I don't know. I talked with someone.

Q But you can't recall who the someone was?

A No sir I can't.

Q Now at page 248 of the record, again you are questioning your client Mr. Johns here. You asked him concerning a Mr. Copland, does that name ring any bells with you?

A No it does not.

Q Did you try to locate a Mr. Copland?

A I can't recall. If you can tell me who Mr. Copland was, perhaps it will assist me.

Q The record indicates he had something to do with running the operation at the place of employment.

A He may have been someone I called, but I just can't recall the name.

### RECROSS EXAMINATION
BY MR. CONWAY:

Q I think you did say that the reason you did not go out and examine the books was because you had been told by whomsoever you talked with on the phone that the books would not show specifically when he did work?

A That is my recollection, yes sir.

### REDIRECT EXAMINATION
BY MR. CHINNIS:

Q I have a few additional questions if it please the court.

You say you talked on the phone with someone with regard to this matter. Did you ever go out there to actually look at their records to see for yourself the records?

A No sir.

Q Did you ever discuss the possibility of a supervisor perhaps being able to testify about Frank being there?

A I don't recall whether I did or not.

Q So that you never actually made an independent investigation?

A You mean physically going out and examining the books?—no sir I did not.

These statements made under circumstances in which one might expect defense counsel to justify his decision not to follow up his client's claim of alibi, fall far short of supporting the District Court's finding that the lawyer "called the proper person at [the] cafeteria" and "found that from a review of the records there by, apparently the person contacted knew the records, that the record had no indication of showing that this defendant worked there at that particular hour and day." Instead, they establish that the lawyer made no more than a cursory inquiry over the telephone of a person unidentified at the evidentiary hearing, and then abandoned the only defense available to his client.

This singular omission becomes all the more significant in the light of the testimony of the payroll department manager who stated that, in addition to the document produced at trial by Johns, there were time cards that would show a time punched in and a time punched out. These cards were available and amenable to examination and subpoena at the time of Johns' trial and they might have shown that he worked on the evening of November 30, 1964, on his assigned third shift from 11 p. m. until 7:30 a. m.

If this fact had been established, or more precisely, if the time cards had created a reasonable doubt about it in the minds of the jury, Johns would not as of this time have served more than six years in prison and would not now face the possibility of more than 50 ad-

ditional years of incarceration. The seriousness of the omission is emphasized by the fact that the employer routinely destroys time cards after five years.

■ The failure to investigate the claimed alibi cannot be dismissed as harmless. The principal inculpating evidence was that of an admitted drug user and police informer, and the identification of Johns by a police officer at a distance of 150 to 200 feet at night when, by the officer's testimony, it was raining and snowing.

As Chief Judge Phillips wrote in Schaber v. Maxwell, 348 F.2d 664, 673 (6th Cir., 1965), "[t]his holding is not intended to be a reflection upon the character, integrity, or professional reputation of [the attorney] who represented petitioner in his criminal trial . . . . We recognize that good lawyers can and do make mistakes . . . ." Nevertheless, we hold that petitioner was deprived of his constitutional right to the effective assistance of counsel. The case is remanded with instructions to grant the writ unless the time cards can be located to permit a fair retrial.

Reversed.