James E. TOSH, Appellant,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.

No. 86–2546.

United States Court of Appeals, Eighth Circuit.

Submitted March 22, 1989.

Decided July 18, 1989.

David Rees, Jonesboro, Ark., for appellant.

Theodore Holder, Jonesboro, Ark., for appellee.

Before WOLLMAN, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

WOLLMAN, Circuit Judge.

On January 15, 1988, we heard oral argument on Tosh's appeal from the district court's denial of his petition for writ of habeas corpus. Concluding that Tosh should have been afforded an evidentiary hearing on his petition, we remanded the case to the district court with direction to vacate the judgment dismissing the petition, to appoint counsel, to grant a hearing, and to certify its findings and conclusions to this panel, which retained jurisdiction. The district court referred this matter to a magistrate, who conducted a hearing on September 7, 1988, and thereafter filed proposed findings and recommendation. The district court rejected those findings, and on February 1, 1989, entered findings of fact and conclusions of law upholding Tosh's ineffective assistance of counsel claim. We agree with the district court's findings, and therefore remand with directions that habeas relief be granted.

On March 15, 1982, an Arkansas state court jury found Tosh guilty of two counts of aggravated robbery and two counts of theft of property. Tosh was sentenced to concurrent fifty-year prison terms under the habitual offender statute. His convictions were affirmed by the Arkansas Supreme Court on direct appeal. *See Tosh v. State*, 278 Ark. 377, 646 S.W.2d 6 (1983). After his petition to apply for post-conviction relief was denied by the Arkansas Supreme Court, Tosh filed this habeas corpus action pursuant to 28 U.S.C. § 2254.

Tosh's convictions arose from events that took place at approximately 2:00 a.m. on July 5, 1981. At that time, a group of five to seven men robbed two different families that were camping at a public campground. Following the robberies, a husband and wife of one of the families identified Tosh as a member of the group. Tosh raised an alibi defense, contending that at the time of the offenses he was with his girlfriend, Becky Lumpkin, in a mobile home park located miles from the campground. Lumpkin's testimony corroborated the alibi. She also testified that Tosh had been confronted by her neighbor, David Nelson, at approximately 2:00 a.m. on July 5. She

testified that Nelson's sister, Delores, and father, James, also observed the confrontation. During cross-examination, the government sought to discredit Lumpkin's testimony by attempting to show that her time estimations were inconsistent, that she was biased because she was romantically involved with Tosh, and that she was promiscuous and morally unworthy.

Tosh alleges that he was deprived of his sixth amendment right to effective assistance of counsel by reason of his counsel's failure to call the Nelsons as witnesses in corroboration of his alibi defense.

David and Delores Nelson testified at the September 7, 1988, evidentiary hearing before the magistrate. David Nelson corroborated Lumpkin's testimony that he had gone to Lumpkin's mobile home at approximately 2:00 a.m. on July 5, 1981, and challenged Tosh to a fight because he was jealous of Tosh's relationship with Lumpkin. He also testified that the location of his father's mobile home, where he and his sister also lived, was such that no one could drive to or from Lumpkin's mobile home without being heard by the Nelsons and that he had heard no one drive in or out during the time in question. Delores Nelson, who was fourteen at the time of the events, testified in a manner consistent with her brother's testimony. James Nelson, who provided deposition testimony, corroborated his children's testimony.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

We turn, then, to the first component of the *Strickland* test—that of deficient performance. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The district court found that the performance of Tosh's counsel was de-

ficient because the counsel did not take reasonable steps to obtain the testimony of the Nelsons.

Because we can summarize the evidence no better than the district court did, we take the liberty of quoting liberally from the district court's findings of fact:

> [T]he evidence at the hearing establishes a strong case that the Nelsons were extremely relevant witnesses and that their attendance at trial was very important. It is undisputed that [Tosh and his family] felt that these witnesses were crucial, and that they had informed their attorney of that fact and the attorney had given them assurances that he was taking care of producing the Nelsons. It is also clear that lack of money was not a reason for failing to take steps to assure that their testimony was brought before the jury, whether the Toshes agreed to put up the expense money or the attorney was willing to advance expenses and recoup on the final bill. There is a dispute as to how precisely the attorney knew Mr. [James] Nelson's whereabouts, but there is no dispute whatever that Mr. Nelson's sister was living in Batesville [Arkansas] and that she was in close contact with Mr. Nelson. Whatever Mr. Nelson's reticence, it is not plausible that his address and phone number could not have been located.

> \* \* \* \* \* \*

> \* \* \* The attorney [however] did not, according to his testimony, definitely locate Mr. Nelson, despite his access to Mr. Nelson's sister. He did not locate the other Nelsons. He did not request a continuance in order to pursue the Nelsons further after Mr. Nelson's last minute announcement that neither he nor his family would attend. Even in view of his self-expressed doubts about the reliability of Mr. Nelson, he did not take all available steps to compel the Nelson's [sic] to give their testimony. Any perceived reluctance by the Nelsons (actually, by the elder Nelson, since the others were never contacted) is no excuse for not calling the witnesses.

Findings of Fact and Conclusions of Law at 11–13.

We agree with the district court that the counsel's failure to call the Nelsons violated Tosh's sixth amendment right to counsel. Of course, not every failure to call an alibi witenss will render an attorney's performance deficient. For example, the decision not to use alibi testimony may reflect the reasonable exercise of judgment in view of the attorney's concern that the testimony would be conflicting, *see Maxwell v. Mabry*, 672 F.2d 683, 686 (8th Cir. 1982), or otherwise unfavorable, *see Bibbs v. Wyrick*, 526 F.2d 226, 228 (8th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976). Likewise, the attorney's efforts to locate the purported alibi witnesses may have been reasonable under the circumstances, *see Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir.), *cert. denied*, 461 U.S. 934, 103 S.Ct. 2100, 77 L.Ed. 2d 307 (1983).

Here, Tosh's counsel believed testimony by the Nelsons was important to Tosh's case, this testimony was in fact significant, and counsel did not make reasonable efforts to procure the testimony. Counsel had assured Tosh and his family that these important witnesses would testify at trial. He did not contact two of the prospective witnesses, but did speak with one, discussing arrangements for travel. In the end, however, he did not produce the witnesses and did not ask for a continuance so that he could insure their presence. We agree with the district court that this performance was deficient.

The district court concluded that Tosh was prejudiced by the absence of this testimony. As the district court found, "The main fact remains untouched: four witnesses, three of them with no interest in the matter one way or the other, are willing to swear that petitioner was somewhere else at the time of the crime. But the jury only heard from one of these witnesses, and that witness was the one whose objectivity was most in doubt." Findings of Fact and Conclusions of Law at 7. We agree with the district court that there is a reasonable probability that but for Tosh's

counsel's failure to call the Nelsons as alibi witnesses, the result of the trial would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Thus, Tosh has satisfied the second component of the *Strickland* test and is entitled to habeas relief.

The case is remanded with directions that the district court grant a writ of habeas corpus upon such conditions as it deems appropriate.