770 A.2d 202

**In re PARRIS W.**

**No. 87, Sept. Term, 2000.**

Court of Appeals of Maryland.

April 16, 2001.

Amy E. Brennan, Julia Doyle Bernhardt, Asst. Public Defenders (Stephen E. Harris, Public Defender, and Daniel H. Weiss, Asst. Public Defender, on brief) Baltimore, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Steven L. Holcomb, Asst. Atty. Gen., on brief) Baltimore, for respondent.

Argued before ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RAKER, Judge

In the Circuit Court for Prince George's County, sitting as the juvenile court, Appellant, Parris W., a juvenile, was found to have committed acts that, had he been an adult, would have constituted the offense of assault in the second degree upon a school mate. Appellant's defense to the delinquency petition

was alibi. During his adjudicatory hearing, Appellant's father testified that his son had been with him all day, including at the time that the assault was alleged to have occurred. The question presented in this appeal is whether Appellant was denied the right to effective assistance of counsel by his trial counsel's error in issuing subpoenas for five corroborating witnesses for the wrong date, when the witnesses would have testified to seeing Appellant with his father at different points throughout the day on which the assault was committed. We shall hold that, under the circumstances presented herein, defense counsel's failure to subpoena the witnesses for the correct day constituted deficient performance and prejudiced Appellant's defense; we shall, therefore, reverse the judgment.

I.

On the afternoon of April 27, 1999, Trenton Anton Morton was standing at the bus stop in front of his school, Thurgood Marshall Middle School in Temple Hills, Maryland, talking to friends who were on the school bus and getting ready to get on the bus to go home after school. Someone approached Morton from behind, punched him once on the right side of his face, and ran away. Morton attempted to chase the assailant, but eventually stopped when he was unable to catch up to him.

On July 28, 1999, the State filed a delinquency petition against Appellant, Parris W., for assault and trespass. Appellant failed to appear at the first scheduled adjudicatory hearing on October 21, 1999. At the second scheduled adjudicatory hearing on December 23, 1999, Appellant's counsel requested a continuance on the grounds that the State had provided the wrong offense date in its discovery responses, so that counsel only discovered the actual date of the offense on the morning of the hearing, a date for which Appellant claimed to have an alibi defense. Appellant's counsel requested the continuance in order to summons the alibi witnesses and provide notice of alibi witnesses to the State pursuant to Maryland Rule 4–263(d)(3). Appellant's counsel proffered, at that time, that Appellant had been with his father the entire

day of the assault, accompanying him on his delivery route for work. The hearing was continued until January 20, 2000. On December 27, 1999, however, the court sent a scheduling notice to Appellant's counsel setting the hearing for January 21, 2000. On January 5, 2000, Appellant sent notice to the State of five alibi witnesses.

On January 21, 2000, Appellant's counsel again requested a continuance on the grounds that he had mistakenly believed that the hearing was still scheduled for January 20th and had subpoenaed a number of alibi witnesses in the case for the wrong day. He requested the continuance in order for the witnesses to be present. The witnesses were two employees of Faith Office Products, where Appellant's father, Mr. W., worked, one customer to whom Mr. W. made deliveries on the day of the assault, as well as two of Mr. W.'s friends, Jeffrey Taylor and Diane Cary. Defense counsel told the court:

Your Honor, we would like to make a request for a continuance due to an error on counsel's part. That is me. I got the date wrong for today's hearing. I thought it was yesterday.

I issued a number of subpoenas for yesterday to witnesses in this case. These folks, the ones we've been able to contact, are not able to come in today. They were prepared to come yesterday. We would request a continuance so we can get those people in.

The people involved are Jeffrey Taylor from D.C., a Diane Cary, and a Tracy Robb from Faith Office Products in D.C., and a Florence Garrett at the same office. These are all adults. They're all working, and they could not make arrangements to get off today.

The State opposed the continuance. Although the prosecutor conceded that his court jacket indicated that the continued hearing was set for January 20, 2000, he proffered that he had "checked the computer," which had indicated that the new hearing date was January 21, 2000, that all of the State's subpoenas had been issued for January 21st, and that the State's three potential witnesses were present. The court

denied the continuance on the grounds that the matter had been scheduled several times and had been continued on a prior occasion.

At the adjudicatory hearing, Morton was the State's sole witness. He identified Appellant as the assailant and testified that he knew Appellant because he had been in a few of his classes. Morton testified that, although he did not see Appellant's face at the time of the assault, he saw Appellant running from behind, and he could identify him because he saw the side of his face as he turned the corner and because he recognized Appellant's clothing, which he had worn previously during the school year. Morton testified that, a few months before the incident that was the subject of the adjudication, Appellant had pulled a knife on him and that Morton had reported him to the principal, resulting in Appellant's expulsion from school.

The only witness called on Appellant's behalf was his father, Anthony W. Mr. W. testified that, on the day of the assault, he had brought his son back to school for a 9:00 a.m. meeting regarding the termination of his three-month expulsion, pursuant to a document from Thurgood Marshall Middle School requesting that Appellant report back to school on that date. Mr. W. said that the vice principal had refused to allow his son to return to school as scheduled because Mr. W. had failed to fill out some required community service paperwork, so he took his son with him on his delivery rounds. Mr. W. testified that he and his son left the school at 9:25 a.m., went to his office in northwest Washington, D.C. from approximately 10:00 to 10:30 and that, after that, he loaded several cases of copy paper into his van. He and his son then made a delivery to northeast Washington, D.C. and, immediately thereafter, they went to the house of a friend, Jeffrey Taylor, in southeast Washington, where they stayed from approximately 11:00 a.m. to 1:45 p.m. He testified that, after that, he and his son went to the apartment of a friend, Diane Cary, in Greenbelt, where they arrived at approximately 2:15 p.m. He said that Ms. Cary was not at home, but that he and his son went inside, and his son played video games while he talked to Ms. Cary on

the phone. Mr. W. testified that they were at Ms. Cary's apartment continuously for the rest of the day, until approximately 11:00 p.m. He testified that Ms. Cary arrived home around 4:30. Mr. W testified that his son never left his sight during the time that they were at Ms. Cary's apartment and that he did not drive him to Thurgood Marshall Middle School in Temple Hills, which he believed was about thirty miles away and would take approximately thirty to forty minutes to reach by car, depending on traffic. He was able to see his son in Ms. Cary's bedroom every time that he walked down the hallway, and his son was unable to drive a car.

On cross-examination and later in closing argument, the State emphasized that Mr. W. was biased—that, as Appellant's father, he had an incentive to provide him with a false alibi for the assault. Ultimately, the court found that Morton was credible, based upon his recognition of Appellant from the side and of his clothing. The court further found that there was no reason presented why Morton would fabricate his testimony if the assault did not happen the way that he testified. The court, therefore, found beyond a reasonable doubt that Appellant had committed the assault as alleged. Appellant was placed under the supervision of the Department of Juvenile Justice, released to the care and custody of his father, and ordered to serve five consecutive weekends at Cheltenham and to perform certain conditions of probation.

Appellant noted a timely appeal to the Court of Special Appeals. This Court issued a writ of certiorari before consideration in the Court of Special Appeals in order to determine whether claims of ineffective assistance of counsel, which are plain on the record, may be raised on direct appeal from a finding of juvenile delinquency and, if so, whether Appellant was denied the effective assistance of counsel.

## II.

Appellant argues that he was denied effective assistance of counsel by his attorney's failure to subpoena properly the necessary alibi witnesses for trial. He contends that their

testimony was critical to the success of his alibi defense and that his counsel's failure to produce them deprived him of a fair trial. Appellant argues that, because counsel's deficient performance was plain and confessed, this Court should reverse the judgment on direct review based on the trial record.

The State argues that Appellant's claim of ineffective assistance of counsel is not preserved for appellate review because it was not raised before the juvenile court and because there is an inadequate evidentiary record on direct appeal to support the claim. The State argues that Appellant must raise his claim pursuant to the Maryland Post Conviction Act, Maryland Code (1958, 1996 Repl.Vol., 2000 Supp.) Article 27, § 645A. On the merits, the State argues that counsel's performance was not deficient and that Appellant was not prejudiced by the failure to subpoena the witnesses for the proper day because he was able to present his alibi defense through the testimony of his father.

### III.

In *In Re*: *Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that, in all juvenile delinquency proceedings that may result in commitment to an institution in which the juvenile's freedom is curtailed, the child has a right to counsel. *See id.* at 41, 87 S.Ct. at 1451, 18 L.Ed.2d 527. It has long been recognized that the right to counsel includes the right to effective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305 (1986); *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986).[1]

---

1. In *In Re*: *Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court, under the Due Process Clause of the Fourteenth Amendment, extended the right to counsel to juvenile delinquency proceedings that may result in commitment to an institution. *See id.* at 41, 87 S.Ct. at 1451, 18 L.Ed.2d 527. It did not do so by specifically

Under *Strickland* and its progeny, in order to demonstrate ineffective assistance of counsel, the Supreme Court has stated that a petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *See Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389 (2000); *Redman v. State*, 363 Md. 298, 768 A.2d 656 (2001); *Bowers v. State*, 320 Md. 416, 427, 578 A.2d 734, 739 (1990) (holding that, in order to establish prejudice, a petitioner must show that there is a substantial possibility that the result of the proceedings would have been different).

▮▮▮ To prove deficient performance, the defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d 674; *Perry v. State*, 357 Md. 37, 78, 741 A.2d 1162, 1184 (1999). The standard by which counsel's performance is assessed is an objective one, and the assessment is made by comparison to prevailing professional norms. *See Morrison*, 477 U.S. at 375, 106 S.Ct. at 2582, 91 L.Ed.2d 305; *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65, 80 L.Ed.2d 674; *Perry*, 357 Md. at 78, 741 A.2d at 1184. Judicial scrutiny of counsel's performance is highly deferential, and there is a strong (but rebuttable) presumption that counsel rendered reasonable assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Morrison*, 477 U.S. at 384, 106 S.Ct. at 2588, 91 L.Ed.2d 305; *Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d 674; *Perry*, 357 Md. at 78, 741 A.2d at 1184. As we indicated in *Redman*, 363 Md. at 310, 768 A.2d at 662, "the inquiry has two foci: first, a performance evaluation under prevailing professional norms; and second, an inquiry

incorporating the full spectrum of rights guaranteed by the Fifth and Sixth Amendments. *See id.* at 61, 87 S.Ct. at 1461, 18 L.Ed.2d 527 (Black, J., concurring). Nonetheless, we are aware of no cases that have interpreted the scope of the right to counsel in juvenile proceedings, including the effective assistance of counsel, any differently because of the origin of the right.

into whether the defendant suffered prejudice as a result of deficient performance."

 In assessing the reasonableness of counsel's performance, the reviewing court should keep in mind that counsel's primary function is to effectuate the adversarial testing process in the particular case. *See Harris v. State,* 303 Md. 685, 698–99, 496 A.2d 1074, 1081 (1985). Nonetheless, a single, serious error can support a claim of ineffective assistance of counsel. *See Morrison,* 477 U.S. at 383, 106 S.Ct. at 2587, 91 L.Ed.2d 305.

 It is the general rule that a claim of ineffective assistance of counsel is raised most appropriately in a post-conviction proceeding pursuant to Maryland Code (1958, 1996 Repl. Vol., 2000 Supp.) Article 27, § 645A. *See, e.g., Austin v. State,* 327 Md. 375, 394, 609 A.2d 728, 737 (1992); *Johnson v. State,* 292 Md. 405, 434–35, 439 A.2d 542, 559 (1982). The primary reason behind the rule is that, ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel. *See Johnson,* 292 Md. at 434–35, 439 A.2d at 559.

 The rule, however, is not absolute and, where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim, there is no need for a collateral fact-finding proceeding, and review on direct appeal may be appropriate and desirable. *See Harris v. State,* 299 Md. 511, 517, 474 A.2d 890, 893 (1984); *see also United States v. Stevens,* 149 F.3d 747, 748 (8th Cir.1998); *United States v. Ortiz,* 146 F.3d 25, 27 (1st Cir.1998); *United States v. Gwiazdzinski,* 141 F.3d 784, 789 (7th Cir.1998); *United States v. Toms,* 136 F.3d 176, 182 (D.C.Cir.1998); *United States v. Lightbourne,* 104 F.3d 1172, 1178 (9th Cir. 1997); *United States v. Fry,* 51 F.3d 543, 545 (5th Cir.1995); *United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993); *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992); *Virgin Islands v. Zepp,* 748 F.2d 125, 133 (3rd Cir.1984); *United States v. Aulet,* 618 F.2d 182, 185–86 (2nd Cir.1980); *Austin,* 327 Md. at 394, 609 A.2d at 737; *Johnson,* 292 Md. at

435 n. 15, 439 A.2d at 559 n. 15; *People v. Tello,* 15 Cal.4th 264, 62 Cal.Rptr.2d 437, 933 P.2d 1134 (1997).

 The case before the Court falls within this exception. The trial record is developed sufficiently to permit review and evaluation of the merits of the claim, and none of the critical facts surrounding counsel's conduct is in dispute. Therefore, a collateral evidentiary hearing on the adequacy of counsel's performance is unnecessary to develop a complete record of the basis for the challenged acts or omissions, and our refusal to address Appellant's claim in this appeal would constitute a waste of judicial resources.[2] We will review the claim.

 That counsel's performance was deficient, even under the highly deferential standard of *Strickland,* seems clear. Appellant's counsel was sent a scheduling notice by the juvenile court indicating that Appellant's hearing was scheduled for January 21, 2000, and counsel does not deny receiving such notice. The prosecutor discovered the new hearing date by checking the court computer, and all of the State's subpoenas were issued for the correct trial date. In fact, defense counsel conceded that the scheduling error was his and that his mistake was the sole reason for the witnesses' failure to appear for the hearing. Based on these undisputed facts, it is clear that counsel's single, serious error of failing to subpoena the witnesses for the correct trial date did not constitute the exercise of reasonable professional judgment and that such failure was not consistent with counsel's primary function of effectuating the adversarial testing process in this case.

 Nonetheless, in considering an ineffective assistance of counsel claim, in addition to establishing deficient performance, in order to warrant relief, Appellant must establish prejudice, i.e., that there is a substantial possibility that, but

---

**2.** The parties in this case dispute the availability to juvenile offenders of post-conviction relief under the Maryland Post Conviction Act, Maryland Code (1958, 1996 Repl.Vol., 2000 Supp.) Article 27, § 645A. Because we have decided to review the claim on direct appeal, we do not reach the question of whether and what post-conviction remedies may also be available for review of juvenile court adjudications.

for counsel's error, the result of his proceeding would have been different. *See Redman,* 363 Md. at 310, 768 A.2d at 662; *Perry,* 357 Md. at 80, 741 A.2d at 1185.

At the adjudicatory hearing, the State never established the time at which the assault on Morton occurred, although the parties seem to have assumed that it occurred at 3:45 p.m.[3] As a result of counsel's error, only one witness testified at the hearing on Appellant's behalf. As indicated *supra,* the victim, Trenton Morton, testified as a witness for the State. He identified Appellant as his assailant and testified that he recognized Appellant from the side and back and by Appellant's clothing. Appellant's father, Anthony W., was the sole witness for Appellant. Mr. W. testified that Appellant had been with him throughout the entire day of the assault. The court found that Morton's identification of Appellant was credible and that there was no reason for Morton to fabricate his testimony. It was on the basis of these findings that the court found Appellant involved in the assault.

Although Appellant has characterized the improperly subpoenaed witnesses as "alibi" witnesses, in reality, they merely would have corroborated portions of Appellant's father's testimony. "An alibi of an accused, proceeding as it does upon the idea that he was elsewhere at the time of the commission of the crime, does, of course, if thoroughly established, preclude the possibility of guilt." *Floyd v. State,* 205 Md. 573, 581, 109 A.2d 729, 732 (1954). An alibi is not an affirmative defense, and a defendant does not bear the burden of proving that he or she was elsewhere during the commission of the crime. As this Court held in *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975):

"[A]n alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer

---

3. During the adjudicatory hearing, defense counsel asked Mr. W. on direct examination if Appellant was within his sight at 3:45 p.m. Morton testified only that the assault occurred after school, as he was getting ready to board the school bus to go home.

convinces the fact finder beyond a reasonable doubt. Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency."

*Id.* at 184, 345 A.2d at 439 (quoting *Robinson v. State,* 20 Md.App. 450, 459, 316 A.2d 268, 272 (1974)). *See* Maryland State Bar Association, Inc., Criminal Pattern Jury Instruction (MPJI–CR) 5:00.

Nonetheless, the pertinent question for the purposes of prejudice analysis under *Strickland* is not whether the missing witnesses could have established an alibi for the defendant, but whether there is a substantial possibility that their testimony, which corroborated a large part of Mr. W.'s alibi testimony, would have been sufficient, in conjunction with the other evidence, to create a reasonable doubt as to Appellant's involvement in the assault.

■■■ Appellant does not challenge the sufficiency of the evidence to support his conviction, and the trial court was not bound to accept Appellant's alibi testimony. *See Floyd,* 205 Md. at 581, 109 A.2d at 732 (noting that all of the evidence is to be considered together and that the trier of fact is not to weigh merely the evidence relating to the alibi and determine from that alone whether there is a reasonable doubt of guilt). Nonetheless, there is a substantial possibility that, had the court heard the proffered testimony of the five subpoenaed witnesses, corroborating substantial portions of Mr. W.'s testimony, the court might have harbored a reasonable doubt as to Appellant's involvement. This is particularly true in a case such as this where the evidence linking Appellant to the crime was solely the victim's identification.

Appellant's father was not an unbiased witness. The first two corroborating witnesses that Appellant had intended to call were coworkers of his father, and a third was a customer on Mr. W.'s delivery route. While none of the three could testify to Appellant's whereabouts in the afternoon when the assault was committed, they could all provide independent corroboration that Appellant accompanied his father on his

delivery route on the day of the assault, which in turn would have tended to strengthen Mr. W.'s claim that Appellant was with him all day. While the fourth and fifth improperly subpoenaed witnesses were family friends, they were less interested parties in Appellant's proceedings than his father. Furthermore, it appears that the fifth witness, Diane Cary, may, in fact, have been able to provide proper alibi testimony, since it was proffered that she arrived at her home around 4:30 on the afternoon of the assault, which was approximately thirty miles from the scene of the assault, and that Appellant and his father were there when she arrived. Given the distance between Ms. Cary's home and the place where Morton was assaulted, and given the uncertainty surrounding the time of the assault, Ms. Cary's testimony alone may have been enough to create reasonable doubt in the mind of the hearing judge had she been available to testify.

That is not to say that the judge would have had to disbelieve the complaining witness. Appellant's counsel attempted to create the possibility of misidentification in his cross-examination of Morton. If Ms. Cary had been present to testify that she had observed Appellant forty minutes away from the scene of the crime at 4:30 p.m., her testimony may have discredited Morton's identification of Appellant as his assailant. It is evident from the trial record that Appellant's counsel's performance in failing to subpoena the five corroborating witnesses for the correct trial date was deficient and that, as a result of the deficient performance, Appellant was prejudiced. Accordingly, we shall reverse.

This case is strikingly similar to that of *Griffin v. Warden, Md. Corr. Adjustment Center,* 970 F.2d 1355 (4th Cir.1992). In that case, the appellant, Donald Griffin, had been identified by two security guards as a participant in an armed robbery that occurred on July 24, 1983 at 3:45 p.m. *See id.* at 1356. Griffin provided his trial attorney with a list of five alibi witnesses to testify regarding his whereabouts on the afternoon of the robbery: a friend who would testify to seeing Griffin between 3:00 p.m. and 3:15 p.m. on the day of the robbery; a second friend who would testify that she had seen

Griffin on his front porch in his pajamas around 3:30 p.m.; two friends who would testify that Griffin arrived at their house at 4:00 p.m., where he remained until nightfall; and Griffin's mother who would testify that he was at home until he left to go to his friends' house shortly after 4:00 p.m. *See id.* at 1358–59. Unfortunately, Griffin's counsel failed to contact the witnesses or provide the state with notice of alibi. As a result, the trial court disallowed their testimony because of the lack of notice, and Griffin alone testified for the defense regarding his alibi. *See id.* at 1356. Griffin was convicted for the robbery.

The United States Court of Appeals for the Fourth Circuit reversed the district court and ordered that a writ of habeas corpus issue on the basis that Griffin was denied effective assistance of counsel. The court found that Griffin's attorney's performance was clearly deficient and concluded that "no reasonable excuse for failing to notify the state of Griffin's alibi and to secure the attendance of alibi witnesses appears or is even suggested in the evidentiary record. Indeed, [defense counsel]'s statements at the bench conference are unambiguous admissions of unpardonable neglect." *Id.* at 1358. The court also found that Griffin had been prejudiced by his counsel's deficient performance, specifically rejecting the district court's conclusion that the evidence would not have established an alibi because it did not cover the period of the robbery based on the full chronology that the witnesses established and the distance between Griffin's friends' house and the scene of the robbery. Emphasizing the state's use of the lack of corroboration for his alibi in closing argument, the court concluded that there was a reasonable probability that the result of Griffin's trial would have been different. The court explained: "Our confidence in the outcome is very much undermined. Eyewitness identification evidence, uncorroborated by a fingerprint, gun, confession, or coconspirator testimony, is a thin thread to shackle a man for forty years. Moreover, it is precisely the sort of evidence that an alibi defense refutes best." *Id.* at 1359.

Appellant's case is also similar to *Montgomery v. Petersen*, 846 F.2d 407 (7th Cir.1988). In that case, the Appellant, Carl Montgomery, was convicted of a burglary that was committed in Moultrie County, Illinois on September 9, 1983. *See id.* at 408. At trial, Montgomery's wife testified that she and her husband had spent the afternoon of the robbery shopping in Springfield, Illinois for a bicycle for their son's birthday and that Montgomery was at home for the rest of the day and evening, in direct contradiction to testimony by Montgomery's alleged coconspirators that they had spent the day committing burglaries. Twelve other witnesses, all relatives or close friends of Montgomery, also testified to observing him in Springfield on the day of the robbery, including at his son's birthday party that evening. Montgomery's trial counsel failed, however, to call the single disinterested witness who could have placed him in Springfield on the day of the burglary——the store clerk who remembered selling a child's bicycle to the Montgomerys that afternoon. *See id.* at 408–09.

At the hearing on Montgomery's petition for post-conviction relief, his trial counsel testified that his failure to investigate the potential alibi witness was inadvertent. *See id.* at 409–10. The United States Court of Appeals for the Seventh Circuit affirmed the district court's grant of a writ of habeas corpus based on ineffective assistance of counsel. The court found that counsel's inadvertent failure to investigate the potential alibi witness was unreasonable and that the failure prejudiced Montgomery, reasoning:

In this case, ... the petitioner has pointed to a specific witness whose missing testimony would have been exculpatory. In fact, the Sears witness' testimony was significant to the petitioner's defense in several respects. First, it directly contradicted the state's chief witness, who testified that he and the petitioner were together outside of Springfield from 9:00 a.m. until 9:00 p.m. that day.... Thus, the Sears clerk's testimony had a direct bearing on this witness' veracity, a witness upon whose testimony the state depended in order to secure a conviction. However, even more important than impeaching the testimony of the state's chief

witness, the Sears clerk's testimony also provided the petitioner with an unbiased alibi defense. As such, it did not merely raise doubts about the petitioner's guilt; if believed by the jury, it would have directly exonerated him of the crime. Finally, the jury might well have viewed the otherwise impeachable testimony of the twelve witnesses who were presented at the Moultrie County trial in a different light had the jury also heard the testimony of this disinterested witness. *Therefore, the Sears clerk's testimony may have transformed a weak case into a strong one merely by corroborating the testimony of these other defense witnesses.* In sum, ... "[i]t is unrealistic to look at [the Sears witness'] testimony as simply cumulative."

*Id.* at 415 (internal citations and footnotes omitted) (emphasis added). The court also noted:

[T]he state appears to question in its brief Judge Mills' classification of the Sears witness as an "alibi" witness.... We think such an argument is particularly unconvincing in light of the fact that the state never contended ... that the petitioner could have purchased the bicycle at the Sears store in Springfield and still have committed the burglaries with [the coconspirator]. "A defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party" is an alibi defense.... Under [the coconspirator]'s version of the crime, the petitioner spent the entire day with him *outside of Springfield* planning and executing the burglaries. Thus, the testimony of the Sears witness, if believed, rendered it impossible for the petitioner to be the guilty party under the prosecution's theory of the case, as presented through the testimony of the professed accomplice.

*Id.* at 415 n. 6 (internal citations omitted).

*Grooms v. Solem,* 923 F.2d 88 (8th Cir.1991), is also instructive. In that case, William Grooms, was convicted of selling stolen Native American artifacts on the basis of the testimony of a police informant who was married to Grooms's ex-wife

with whom Grooms was engaged in a bitter custody battle over their three children. The incident at issue had occurred on May 15, 1984, in Scenic, South Dakota, between 5:00 and 5:30 p.m. Grooms claimed to have spent that day with his wife and a friend in Rapid City, South Dakota, which is approximately fifty miles from Scenic, waiting for the transmission in his pickup to be replaced. He also claimed that the repair was not completed until dusk, well after the time at which the illegal sale was to have taken place. *See id.* at 89. Grooms's trial counsel did not check with the repair shop to establish whether anyone recalled repairing his truck on May 15th, although two employees of the repair shop could have corroborated Grooms's story by testifying that they had finished the transmission installation at approximately 7:00 or 7:30 p.m. *See id.* at 89–90.

The United States Court of Appeals for the Eighth Circuit held that Grooms's trial counsel had been constitutionally ineffective, finding that his failure to investigate Grooms's alibi or to request a continuance for further investigation constituted deficient performance. *See id.* at 90. On the issue of prejudice, the court stated:

> Prejudice can be shown by demonstrating that the uncalled alibi witnesses would have testified if called at trial and that their testimony would have supported Grooms' alibi. . . . The testimony of [the two mechanics] at the state court's habeas corpus hearing established that they would have been available to testify if they had been called and that their testimony, if believed, would have supported Grooms' alibi defense. Thus, there is a reasonable probability that had these witnesses been called, the outcome of the trial . . . would have been different, given the arguably plausible motivation [the informant] had to be less than a disinterested, objective witness against Grooms. Likewise, . . . the alibi testimony could have raised a reasonable doubt about [the informant]'s veracity and credibility. . . .

*Id.* at 91 (internal citations omitted).

Likewise, in *Tosh v. Lockhart*, 879 F.2d 412 (8th Cir.1989), the United States Court of Appeals for the Eighth Circuit

found that the failure to call two corroborating alibi witnesses violated petitioner's Sixth Amendment right to counsel. In that case, the appellant, James Tosh, was convicted of aggravated robbery and theft of property for two campground robberies that took place at approximately 2:00 a.m. on July 5, 1981. Following the robberies, two victims identified Tosh as a member of the group of five to seven robbers. At trial, Tosh contended that, at the time of the robberies, he was with his girlfriend, Becky Lumpkin, several miles from the campground, which Lumpkin confirmed. Tosh also claimed that he had been confronted by Lumpkin's neighbor, David Nelson, at approximately 2:00 a.m. that night and that two other witnesses observed the fight. Nonetheless, Tosh's trial counsel did not call David Nelson or the other two witnesses at his trial, relying solely on Lumpkin to provide Tosh's alibi. At Tosh's habeas corpus hearing, Nelson corroborated Tosh's story regarding the fight and testified that no one could drive to or from Lumpkin's residence without being heard and that he had not heard anyone drive in or out during the time in question. Two other members of the Nelson family testified at the habeas corpus hearing in a manner consistent with David Nelson's testimony. *See id.* at 413.

The court found that Tosh's counsel's performance was deficient in not making reasonable efforts to produce the corroborating witnesses or asking for a continuance to ensure their presence. *See id.* at 414. The court found that this deficiency prejudiced Tosh, reasoning:

"The main fact remains untouched: four witnesses, three of them with no interest in the matter one way or the other, are willing to swear that petitioner was somewhere else at the time of the crime. But the jury only heard from one of these witnesses, and that witness was the one whose objectivity was most in doubt." ... [T]here is a reasonable probability that but for Tosh's counsel's failure to call the Nelsons as alibi witnesses, the result of the trial would have been different.... Thus, Tosh has satisfied the second

component of the *Strickland* test and is entitled to habeas relief.

*Id.* at 414–15 (internal citations omitted).

Appellant's case is also similar to *Johns v. Perini,* 462 F.2d 1308 (6th Cir.1972). In that case, Frank Johns had been convicted of the possession and distribution of marijuana for an alleged sale that took place in a tavern on November 30, 1964 after 11:00 p.m. *See id.* at 1309–10. Two prosecution witnesses identified Johns as the seller of the marijuana. *See id.* at 1310. Johns claimed that he was at work by 11:00 p.m. on that evening, but Johns's counsel failed to investigate Johns's alibi or to give the statutorily required three-day notice of alibi. *See id.* at 1309. At trial, the prosecutor had no objection to Johns testifying about his employment, but he opposed vigorously any attempt to corroborate the alibi claim with employment records that were available to defense counsel. *See id.* at 1310. The trial court refused to admit the employment records, but allowed Johns to testify regarding his alibi. *See id.* at 1310, 1313–14. The records did not indicate which specific days of the week Johns worked, but did indicate that he had worked twenty-four hours over three days the week of the alleged drug sale and that his work schedule required him to be at work at 11:00 p.m. on the days that he worked. *See id.* at 1311. The United States District Court denied a writ of habeas corpus on the grounds that defense counsel's failure to file the notice of alibi was harmless since the trial court's decision not to admit Johns's pay stubs was valid because they did not demonstrate that he had worked on the night of the marijuana sale. *See id.* at 1309 n. 1 & 1313. The United States Court of Appeals for the Sixth Circuit reversed, holding that counsel's failure to investigate and present Johns's alibi deprived him of his constitutional right to effective assistance of counsel.[4]

---

4. *Johns v. Perini,* 462 F.2d 1308 (6th Cir.1972), was decided prior to *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984), which established the two-pronged performance and prejudice test for evaluating effective assistance of counsel claims

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE PAID BY RESPONDENT.*

under the Sixth Amendment. Thus, the court in *Johns* employed a harmless error analysis in finding that defense counsel's failure to investigate the claimed alibi defense was unconstitutional. *See Johns*, 462 F.2d at 1315.