Donald G. GRIFFIN, Petitioner–Appellant,

v.

WARDEN, MARYLAND CORRECTIONAL ADJUSTMENT CENTER; Attorney General of the State of Maryland, Respondents–Appellees.

No. 91–6066.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1992.

Decided July 28, 1992.

Mark Lawrence Gitomer, Cardin & Gitomer, P.A., Baltimore, Md., argued, for petitioner-appellant.

Gary Eugene Bair, Asst. Atty. Gen., Crim. Appeals Div., Baltimore, Md., argued (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Crim. Appeals Div., on brief), for respondents-appellees.

Before ERVIN, Chief Judge, and HALL and PHILLIPS, Circuit Judges.

OPINION

K.K. HALL, Circuit Judge:

Donald Griffin appeals a final order of the district court denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Concluding that Griffin was denied the minimum level of effective assistance of counsel guaranteed to him by the Sixth Amendment, we reverse.

## I.

At 3:45 p.m. on July 24, 1983, a Rite–Aid Drug Store in Baltimore, Maryland, was robbed by two men armed with handguns. Two security guards were shot and wounded during the robbery.

Two days later, one of the security guards picked appellant Donald Griffin out of a photo array. When he learned that he was wanted in connection with the robbery, Griffin surrendered to police. He was charged with robbery and using a handgun during a crime of violence. Attorney Charles Howard entered an appearance for Griffin in December, 1983, and represented him when he tendered a not guilty plea. On or about February 22, 1984, Griffin and his mother, Dorothy Josey, provided attorney Howard with a list of five alibi witnesses. Howard failed to contact these witnesses or to respond to the state's discovery requests, among which were requests to be notified of intent to rely on alibi and for the identities of alibi witnesses. See Md.Rule 4–263.

From his personal standpoint, Howard had more serious concerns than his representation of Griffin. On June 1, 1984, he was disbarred for misappropriating client funds, commingling funds, failing to keep records, and neglecting a legal matter. In concluding that the ultimate sanction of disbarment was warranted, the Maryland Court of Appeals pointed out that it had previously reprimanded Howard for neglecting cases, including, on three occasions, failing to be present when a case was called. *Attorney Grievance Comm'n v. Howard,* 299 Md. 731, 737–738, 475 A.2d 466 (1984), *citing, Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 385 A.2d 1191 (1978).

George David, who shared office space with Howard, took over Griffin's file. Howard advised David to "take a plea" for Griffin. David, expecting Griffin to plead guilty, did nothing. He contacted no witnesses, though he "imagine[s]" he "glanced" at the file, and he failed to confirm that the state's discovery requests had been answered. At a hearing on October 25, 1984, four months after he entered his appearance in Howard's stead, David met his client for the first time. At this hearing, David expected Griffin to plead guilty. Griffin refused.

On November 19, 1984, Griffin's case was scheduled for trial. David still expected Griffin to change his mind and plead guilty, and he had done nothing more to prepare for trial. Instead, Griffin reiterated his not guilty plea and told the court he was "uncomfortable" with his attorney. Just before the jury was brought into the courtroom, this colloquy, a harbinger of the events we address today, ensued:

THE COURT: Now, Mr. Griffin, have you had an opportunity to discuss your case adequately with Mr. David? Have you talked it over with him?

THE DEFENDANT: Somewhat. I haven't talked at all with him.

THE COURT: Was there anything you wanted to tell him that you haven't told him?

THE DEFENDANT: I haven't seen my true bill indictment papers or nothing. I ain't seen nothing.

THE COURT: All right. Show it to him, Mr. David. Anything else other than that?

THE DEFENDANT: No, not really. I just wanted to know everything they charging me with.

The state's evidence at trial consisted of two eyewitness identifications by the security guards. Because David had failed to contact any of Griffin's witnesses, only one—Dorothy Josey, Griffin's mother—was present. She was there only because Griffin himself had been able to get a message to her through a cellmate that the trial was about to be held.

Attorney David called Josey to the stand. When he asked a question that would have prompted alibi testimony, the state objected. At a bench conference, the court ruled that the testimony would not be permitted because of David's (and Howard's) failure to notify the state of Griffin's intent to rely on an alibi. David offered two excuses for the failure to respond to the state's discovery request, both of which were confes-

sions of his own dereliction. First, he told the court that "any discovery ... would have been propounded to Charles Howard and I don't know if he replied or not." Moments later, he said "it's been my impression ... that this case was going to be pleaded all the way up until this morning."

Unable to elicit the alibi evidence, David asked Griffin's mother no further questions. Griffin then testified on his own behalf. He stated that he was at home in his pajamas at the time of the robbery, and that soon thereafter he went with Rodney Staples and Perry Payne to Eddie Williams' house.

On closing argument, the prosecutor attacked Griffin's story, and specifically referred to the lack of corroboration of his alibi. In other words, the state got double mileage out of the failure to notify it of the alibi defense—it was able to exclude evidence corroborating Griffin's story and then emphasize the lack of corroboration to the jury.

Griffin was convicted of robbery and use of a handgun in connection with a crime of violence. He was sentenced to two consecutive twenty-year terms. He appealed. The Court of Special Appeals affirmed, holding that the trial court acted within its discretion in refusing to admit the alibi testimony.[1] *Griffin v. State,* No. 166 (Md. Ct.Spec.App., October 21, 1985). The appellate court had harsh words for attorney David, however: "Appellant's trial counsel's excuse that he thought there would be a plea bargain is no justification for neglecting to discover alibi witnesses and reveal them to the State." Griffin's petition for certiorari to the Court of Appeals of Maryland was denied.

On October 1, 1987, Griffin filed a petition for post-conviction relief in state trial court, in which he argued that he had been denied effective assistance of counsel. An evidentiary hearing was held, at which Griffin, his five alibi witnesses, and both attorneys—Howard and David—testified. The state court denied relief. *Griffin v. State,* P.C.P.A. No. 6113 (Baltimore (Md.) City Cir. Ct., June 1, 1988). The Court of Special Appeals denied leave to appeal on December 7, 1988. On December 6, 1990, Griffin filed this petition in district court under 28 U.S.C. § 2254. Adopting the reasoning of the state court, which we discuss below, the district court denied the petition without a hearing on April 2, 1991. Griffin appeals.

## II.

The Supreme Court has devised a two-step inquiry to determine whether a lawyer's poor performance has deprived an accused of his Sixth Amendment right to assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that his attorney's performance was deficient. "Deficient performance" is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance. Second, the defendant must show that he was prejudiced by the substandard performance. "Prejudice" is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Because effectiveness of counsel is a mixed question of law and fact, we owe no special deference to the finding of the state court on the question. *Id.* at 698, 104 S.Ct. at 2070.

---

**1.** A criminal defendant's right to present witnesses is of course protected by the Compulsory Process Clause of the Sixth Amendment, and trial courts must take this right into account in sanctioning a defendant for noncompliance with a discovery rule. Since the Maryland courts considered Griffin's direct appeal, the United States Supreme Court has held that the extreme sanction of preclusion is constitutional under some circumstances, and at least where a discovery rule is willfully violated by the defendant in hopes of gaining a tactical advantage. *Taylor v. Illinois,* 484 U.S. 400, 415, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988). In any event, Griffin has not asserted a *Taylor*-style compulsory process claim on collateral review in either the state or federal courts.

### III.

■ The "deficient performance" prong is easily met here. An attorney's failure to present available exculpatory evidence is ordinarily deficient, "unless some cogent tactical or other consideration justified it." *Washington v. Murray,* 952 F.2d 1472, 1476 (4th Cir.1991). *Accord, Lawrence v. Armontrout,* 900 F.2d 127, 130 (8th Cir. 1990), *appeal after remand* 961 F.2d 113 (8th Cir.1992) (failure to interview alibi witnesses was deficient performance under first *Strickland* factor); *Harris v. Reed,* 894 F.2d 871, 878 (7th Cir.1990) (failure to call witnesses to contradict eyewitness identification of defendant was ineffective assistance); *Grooms v. Solem,* 923 F.2d 88, 90 (8th Cir.1991) ("it is unreasonable not to make some effort to contact [alibi witnesses] to ascertain whether their testimony would aid the defense").

As we will discuss below, the "cogent tactical considerations" that the state court bestowed on David for failing to present Griffin's alibi witnesses are exercises in retrospective sophistry. From the attorney's perspective at the time of trial, no reasonable excuse for failing to notify the state of Griffin's alibi and to secure the attendance of alibi witnesses appears or is even suggested in the evidentiary record. Indeed, David's statements at the bench conference are unambiguous admissions of unpardonable neglect. We hold that counsel's performance was deficient.

### IV.

■ We thus turn to the second *Strickland* factor: was Griffin prejudiced, i.e., does the attorney's deficient performance undermine confidence in the outcome? The state post-conviction court focused on this prong, but its decision invokes speculation and hindsight to evade the stark prejudice we find apparent. A synopsis of the state court's analysis of the testimony of the alibi witnesses will illustrate.

### A.

Joseph "Eddie" Williams and his mother, Beatrice Williams, both testified that Grif-

fin arrived at their house at 4 p.m. on the date of the robbery, where he remained, watching sports and eating chicken, until nightfall. The state court concluded that this evidence did not establish an alibi because it "[did] not cover the period in question." The court's conclusion is strained, at best. The Williams' house is three to four miles from the site of the robbery. Griffin testified that it takes twenty to twenty-five minutes to drive that distance because of numerous stoplights. Finally, the court ignored the trial testimony of one of the Rite Aid security guards, who testified that the robbers *entered* the store at 3:45 p.m. and did not leave until ten to fifteen minutes later.

### B.

Rodney Staples testified that he arrived at Griffin's house between 3:00 and 3:15 p.m. on the day of the robbery. He stated that soon thereafter he and Griffin went to the Williams' house to watch sports. Inasmuch as this testimony clearly "covers" the period in question, the state court took a different tack. Staples had been picked out of a photo array by one of the security guards and identified as one of the robbers. Therefore, concluded the state court, it may have been sound trial strategy not to call Staples, i.e. if he were an accomplice, and the state could show that when he was on the stand, it could have hurt Griffin's case.[2]

This reasoning is thoroughly disingenuous. David did not even talk to Staples, let alone make some strategic decision not to call him. *Strickland* and its progeny certainly teach indulgence of the on-the-spot decisions of defense attorneys. On the other hand, courts should not conjure up tactical decisions an attorney could have made, but plainly did not. The illogic of this "approach" is pellucidly depicted by this case, where the attorney's incompetent performance deprived him of the opportunity to even make a tactical decision about putting Staples on the stand. A court should

---

**2.** Staples has never been formally charged with complicity in the robbery.

"evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Tolerance of tactical miscalculations is one thing; fabrication of tactical excuses is quite another. *Kimmelman v. Morrison*, 477 U.S. 365, 386–387, 106 S.Ct. 2574, 2588–2589, 91 L.Ed.2d 305 (1986) (hindsight cannot be used to supply a reasonable reason for decision of counsel); *Harris*, 894 F.2d at 878 (same).

### C.

Griffin's mother testified that her son was at home until he left to go to the Williams' shortly after 4:00 p.m. The state court faulted this testimony because of discrepancies between it and other alibi testimony in estimates of times. Inasmuch as the state court discounted all the other alibi evidence, the court's insistence that Griffin's mother's testimony be strictly consistent with it is a plain fallacy.

The state court also credited David's testimony that he was afraid Griffin's mother would commit perjury as a sound reason not to put her on the stand. Again, this retro-speculative reasoning (advanced, we must note, in the sworn testimony of an officer of the court) bizarrely ignores, and is utterly belied by, the actual course of the trial. *David put Griffin's mother on the stand. He tried to introduce her testimony establishing an alibi.* He failed because of his disregard of professional duty. The tug on his conscience not to sponsor perjured testimony is revisionist history.

### D.

Monica Tyson testified that she talked briefly with Griffin between 3:30 and 4:00 p.m., when Griffin was seated on his front porch in his pajamas.[3] The state court ruled that this testimony "did not affirmatively demonstrate that [Griffin] was at home when the crime was committed."

This last quote brings us to a legal error that complements the tortured logic of the state court's factual analysis—an overly-strict legal standard for the second *Strickland* prong. The court stated that Griffin had to "demonstrate affirmatively that, but for trial counsel's unprofessional errors, the result would have been different." *Strickland* is not so demanding. If a petitioner establishes a *reasonable probability* that the result would have been different, prejudice is established. Moreover, a "reasonable probability" is simply "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

Our confidence in the outcome is very much undermined. Eyewitness identification evidence, uncorroborated by a fingerprint, gun, confession, or coconspirator testimony, is a thin thread to shackle a man for forty years. Moreover, it is precisely the sort of evidence that an alibi defense refutes best. *Lawrence*, 900 F.2d at 130; *cf. Montgomery v. Petersen*, 846 F.2d 407, 415–416 (7th Cir.1988) (where trial was "swearing match" between biased witnesses, counsel's failure to call unbiased alibi witness was prejudicial); *Harris*, 894 F.2d at 879 (failure to call two witnesses who would have identified someone else as perpetrator prejudicial where prosecution relied on single eyewitness identification). This excerpt from the prosecutor's closing argument, to which we referred earlier, demonstrates the narrow scope of the state's case and the prejudice that resulted to Griffin from his inability to introduce alibi evidence (emphasis added):

> The entire case hinges on the credibility of the witnesses. Who do you believe? Do you believe ... the security officers, who were trained as security officers in identification, who have positively identified Donald Gary Griffin as the individual responsible for shooting them on July 24th, 1983 or do you believe Donald Gary Griffin, who makes the self-serving statement, I was at home at the time that the alleged incident took place, I had been out all night, I did not return home until seven o'clock that morning, I was in

---

**3.** Griffin's mother corroborated that Tyson had spoken to her son, though she estimated the time as 3:20 to 3:30 p.m.

my pajamas at 3:30 in the afternoon when friends of mine, *none of which you heard from,* come in and they went to a friend's house?

The judgment of the district court is reversed, and the case is remanded with instructions to grant the writ.[4] Unless the state elects to retry him within sixty days from the issuance of the writ, Griffin should be released.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

**4.** Because of our disposition of Griffin's ineffectiveness claim, we do not address his contention that the state court unconstitutionally punished him, through an increased sentence, for exercising his right to a jury trial.