PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

No. 02-7918

RALPH LEON TERRY,
                *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Cameron McGowan Currie, District Judge.
(CR-98-1118; CA-02-57-5-22)

Argued: February 24, 2004

Decided: April 26, 2004

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge King and Judge Gregory joined.

## COUNSEL

**ARGUED:** John Bottini, Third Year Law Student, Appellate Litiga-
tion Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Char-
lottesville, Virginia, for Appellant. Stacey Denise Haynes, Assistant
United States Attorney, Columbia, South Carolina, for Appellee. **ON
BRIEF:** Neal Lawrence Walters, Charlottesville, Virginia, for Appel-
lant. J. Strom Thurmond, Jr., United States Attorney, Columbia,
South Carolina, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Appellant, Ralph Terry, was convicted by a jury of two federal counts relating to cocaine distribution. His sentence was based, in part, on the testimony of his co-conspirator, Eric Jensen, concerning Terry's involvement with him in a prior drug deal involving a large quantity of marijuana, conduct that was not specified in Terry's indictment. Subsequently, Terry filed a motion pursuant to 28 U.S.C. § 2255 raising, *inter alia*, claims of ineffective assistance of counsel. The claims were based on the asserted deficient performance of Terry's trial counsel in several respects, each deficiency of which allegedly resulted in the omission of testimony that had a reasonable probability of discrediting Jensen's testimony about the marijuana transaction, which in turn could have significantly reduced the sentence Terry received. Terry sought to appeal the district court's denial of his motion to this court, and Judge Gregory granted a certificate of appealability as to the ineffective assistance claims. Having fully considered these claims on their merits, we now affirm.

I.

In December of 1998, a federal grand jury charged Terry with one count of conspiring with Eric Jensen to possess with intent to distribute cocaine, and one count of possession with intent to distribute and distribution of a quantity of cocaine. At trial, the government called five witnesses: Jensen (who pled guilty prior to trial), Richard Williamson, Terry Davis, and two agents of the South Carolina Law Enforcement Department ("SLED"). The bulk of the government's evidence went to facts surrounding a cocaine transaction that occurred on November 7, 1998, after Herbert ("The Breeze") Timmons, a confidential informant, advised SLED agents of an imminent drug deal near Columbia, South Carolina. Timmons was a friend of Williamson, who knew Jensen. Williamson had told Timmons the previous day that Jensen had powder cocaine for sale, and offered to assist Timmons in an undercover drug operation. Williamson made plans to bring Jensen up from Florida so that Jensen could sell the cocaine to Timmons.

Williamson had identified "Ralph" as Jensen's source for the cocaine. "Ralph" planned to drive to Columbia to deliver the cocaine to Jensen, which Jensen would then sell to Timmons. On the morning of the day in question, Jensen met Ralph Terry at his girlfriend's house. There, Terry helped Jensen "cut" four ounces of cocaine into seven, and then gave Jensen the powder, with the intention of being repaid after its sale. Later that day, Timmons met Williamson and Terry to discuss a deal. At that meeting, Jensen agreed to sell Timmons four ounces of cocaine, and Jensen was arrested. Jensen quickly agreed to cooperate and identified Terry as his drug source. The agents had Jensen make a recorded call to Terry, in which Jensen told Terry he had part of his money and could pick it up at the hotel. Terry came to the hotel, and was arrested shortly after he arrived there.

In establishing the extent of the relationship between Jensen and Terry, the government also presented evidence of their prior conduct together. Jensen testified that he met Terry while they were both in prison. After their release, Terry pressured Jensen to start dealing drugs again, and Jensen eventually agreed. The two engaged in an initial transaction involving fifteen or twenty pounds of marijuana, which Terry supplied to Jensen. Subsequently, a larger transaction occurred in which Terry delivered a car with marijuana in its trunk to Jensen, which Jensen was to take to one Rodney Mayo. When he brought the car to Mayo and the trunk was opened, Jensen discovered approximately 100 pounds of marijuana inside. Jensen gave the drugs to Mayo and returned the car to Terry.

As to the case in defense, Terry's appointed trial counsel presented Terry's girlfriend, as an alibi witness whose testimony cast doubt on Jensen's description of his activities with Terry that morning. Additionally, trial counsel cross-examined each of the prosecution's witnesses, often at some length. Nevertheless, the jury convicted Terry of both counts.

A presentence report was submitted to the court. The report recommended inclusion of the 100 pounds of marijuana that Jensen delivered for Terry, as relevant conduct for determining Terry's sentence. The district court adopted the report's findings and sentenced Terry to 97 month sentences on each count, with the sentences set to run concurrently. On direct appeal, this court affirmed Terry's convic-

tions. *United States* v. *Terry*, 14 Fed. Appx. 253 (4th Cir. 2001) (unpublished).

Subsequently, Terry filed a *pro se* motion under 28 U.S.C. § 2255, in which he asserted several claims. Without holding an evidentiary hearing, the district court denied relief on all claims, denied Terry's subsequent motion for reconsideration only as to his ineffective assistance of counsel claims, and denied a certificate of appealability. Terry timely sought appeal to this circuit, however, and Judge Gregory granted a certificate "on the issues of whether counsel was ineffective for advising Terry not to testify and for failing to call witnesses who Mr. Terry alleged were prepared to testify." We appointed Terry appellate counsel, directed additional briefing, and heard argument.

II.

In order to establish a claim for ineffective assistance of counsel, Terry must show, first, that his trial counsel's performance was deficient and, second, that the deficiency prejudiced Terry's defense. *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*'s "performance" prong, Terry must demonstrate that trial counsel's performance fell below an objective standard of reasonableness determined by comparison to "prevailing professional norms." *Id*. at 688. In addition, Terry must also show under *Strickland*'s "prejudice" prong that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. If Terry conclusively fails to demonstrate sufficient prejudice from certain acts or omissions, we need not decide whether counsel's performance in those regards was, in fact, deficient under *Strickland*. *See id*.

Terry claims that his trial counsel provided ineffective assistance of counsel in three ways, two of which are based on trial counsel's advice to Terry not to testify, and the other of which stems from trial counsel's failure to call as witnesses three inmates whom Terry alleges were prepared to testify. Moreover, even if the court cannot accept those claims on the record as it now stands, Terry asserts that the case must be remanded for an evidentiary hearing as he contends section 2255 requires. We conclude, however, that even if Terry's

evidence was believed, it would not establish ineffective assistance. Thus, an evidentiary hearing is unnecessary and, accordingly, we affirm the district court's rejection of Terry's claims on the record evidence.

### III.

While Terry makes three general claims of ineffective assistance, the locus of the first two lies in Terry's not testifying due to trial counsel's performance. First, Terry claims that trial counsel's decision to advise him not to testify on his own behalf (which he eventually followed) was unreasonable in view of the exculpatory testimony he would have provided and given that counsel's "stated tactical reason" for so recommending — avoiding opening the door to Terry's past convictions — was insufficient, since the existence of those convictions had already come out by the end of the government's case-in-chief. This unreasonableness was, Terry contends, further compounded by the fact that trial counsel had promised the jury in his opening statement that Terry would testify to explain a prior marijuana conviction. Second, even if we conclude that trial counsel's recommendation not to testify was reasonable, Terry claims that counsel's performance was nevertheless deficient because he incompletely or inaccurately informed Terry of the negative consequences of his decision not to testify, in contravention of counsel's obligation to assure that Terry's waiver of that right was intelligent, voluntary, and knowing.

We think it unlikely that trial counsel's performance in these regards was constitutionally deficient, especially given the deference we accord the delicate balancing involved in any attorney's decision to advise his client whether to take the stand in his own defense. But since it is so clear that counsel's purported deficiencies did not prejudice Terry, we need not analyze the sufficiency of counsel's performance as to these first two claims in detail.

### A.

Before analyzing these first claims for prejudice, we must examine the manner in which Terry has alleged the "result of the proceeding" was affected by trial counsel's allegedly deficient performance. We

note that Terry's ineffective assistance claims are all premised on his assertion that, as a drug conspiracy defendant, he faced the significant possibility of being sentenced for drug amounts not specified in his indictment, so it was "imperative" that trial counsel contest evidence of such drug amounts. Here, Jensen was the sole witness to Terry's involvement with the 100 pounds of marijuana used as relevant conduct in determining his sentence. Absent the district court's crediting of Jensen's testimony, Terry claims that his guideline range on each count would have been 33-41 months — less than half of the 97 months he received. According to Terry, trial counsel had two readily available means of attacking Jensen's credibility — through Terry's testimony and that of the three other witnesses that Terry identified — but counsel's ineffective assistance prevented the presentation of this testimony.

Notably, however, this discussion of Terry's grievance shows the limited scope of his prejudice claim. Terry has, for example, no evidence that the testimony that he would have provided as to the marijuana transaction and Jensen's credibility could have reasonably placed any doubt in the jury's mind as to his guilt for the charged crimes relating to cocaine distribution. Instead, the only "result of the proceeding" for which Terry can plausibly establish prejudice is the sentence he received. We have confined our prejudice analysis accordingly.

B.

We now turn to the issue of whether trial counsel's performance with respect to Terry's testifying had a reasonable probability of affecting Terry's sentence. In this context, Terry's claim requires, as a threshold matter, there to be a reasonable probability that if Terry had testified, the district court would not have accepted, for sentencing purposes, either the very existence, or the full amount, of the marijuana Jensen claimed was involved in their earlier dealings.

Of course, this contention is most directly examined by comparison of Jensen's testimony as it stood at trial with Terry's case in defense, as buttressed by the testimony he allegedly would have provided. As to the former, Jensen's account of the prior marijuana transaction used in sentencing Terry was specific and detailed. In contrast, Terry

provides no concrete evidence of what he would have testified to in exculpation. He says only that he would have denied Jensen's claim and impeached Jensen's credibility, but omits any details that explain why the district court would have given his claims any weight. His conclusory allegations are insufficient to establish the requisite prejudice under *Strickland*.*

The weakness of Terry's possible testimony is only compounded by the district court's finding that Jensen's testimony was extremely credible. In particular, the court observed during the sentencing hearing that "[t]here was no doubt in my mind as to the credibility of Mr. Jensen at the trial. *He was one of the more credible witnesses that I have observed testify.*" J.A. 579 (emphasis added). So notwithstanding that Jensen was the primary source of evidence for the marijuana deal, the record evidence indicates that there is little chance that Terry's testimony (even combined with that of the witnesses discussed below) would have been credited at sentencing over Jensen's.

Moreover, we must determine the prejudice of omitted testimony not simply by analysis in a vacuum of its likely effect on the evidence that was actually adduced but, rather, with respect to the relevant burden and standard of proof. As such, we can confidently say in this case that even in the unlikely event that Terry's testimony introduced *some* doubt in the district court's mind as to the accuracy of Jensen's testimony, Terry's claims would still fail. Since the government only needed to establish the amount of marijuana attributable as relevant conduct by a preponderance of the evidence, there would be, even then, no reasonable probability that Terry's sentence would actually have changed. In sum, even if counsel's performance with respect to Terry's testifying was constitutionally deficient, we cannot conclude that this deficiency had a prejudicial effect on his sentence.

---

*Cf. *Anderson* v. *Johnson*, 338 F.3d 382, 393 (5th Cir. 2003) (assessing prejudice by weighing state's case as it was presented against the defense's case had counsel called the witness at issue, and finding sufficient prejudice under *Strickland* when the omitted witness' testimony would have been a "powerful rebuttal" to the state's "relatively weak case") (internal quotation marks omitted).

IV.

We next address Terry's ineffective assistance claim based on trial counsel's decision not to call as witnesses three inmates who allegedly could have offered exculpatory testimony on Terry's behalf. Counsel averred that he did not call the inmates because he thought that calling a lone, alibi witness (Terry's girlfriend) was "the best defense we had available," and he did not "feel [the three inmate witnesses] would have made much difference [since] these were all people from the jail." J.A. 769. According to Terry, however, "each of these three proposed witnesses would have offered testimony that would have directly attacked the evidence [provided by Jensen and Davis] of any prior drug dealings by Mr. Terry." Br. of Appellant at 41-42. Terry claims that the fact *that* these witnesses were inmates was not a "cogent tactical . . . consideration," *Washington* v. *Murray*, 952 F.2d 1472, 1476 (4th Cir. 1991), sufficient to justify counsel's failure to present the exculpatory evidence that the witnesses could have provided.

While we cannot manufacture excuses for counsel's decision that he plainly did not and could not have made, *see Griffin* v. *Warden, Md. Corr. Adjustment Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992), neither must we, as Terry seems to suggest, confine our examination of the reasonableness of trial counsel's decision to only the literal wording of his explanation. Rather, we evaluate the reasonableness of counsel's explanation for not calling these witnesses in light of "the circumstances of counsel's challenged conduct, and . . . from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In so doing, we "must indulge a strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The difficulty of overcoming that general presumption is even greater in this case, given that "the decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "[w]e must afford . . . enormous deference." *United States* v. *Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994) (internal quotation marks omitted). *See also Byram* v. *Ozmint*, 339 F.3d 203, 209 (4th Cir. 2003), *cert. denied*, 2004 WL 547249 (U.S. Mar. 22, 2004).

After reviewing the record evidence, we conclude that trial counsel's performance in this regard could not be considered constitutionally deficient. In particular, it certainly was not "below the wide range of professionally competent performance," *Griffin*, 970 F.2d at 1357, for counsel to have concluded that these inmates would not improve the case in defense that he presented by calling only Terry's girlfriend, given the circumstances of his representation of Terry and the potential effect of the inmates' testimony. For one, trial counsel's explanation that those witnesses would not help because they were inmates must be reviewed in the context of how trial counsel would have perceived Terry's decision to reject a favorable plea agreement and go to trial. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). More specifically, the evidence shows that Terry rejected a plea agreement that would have achieved a result similar to that he now claims that the three inmates' testimony would have had (*e.g.*, the exclusion of the marijuana transaction from the calculation of his sentence). *See* J.A. 773. Instead, he chose to risk the vagaries of trial by jury. In light of that decision, it would have been eminently reasonable for trial counsel to conclude that Terry desired acquittal even at the risk of a higher sentence if he was convicted, and from that to believe that Terry's "best defense" was one that, although leaving unchallenged relevant evidence for sentencing, increased the likelihood of Terry's acquittal.

To be sure, trial counsel's explanation is not ideal in its specificity. But Terry is simply wrong to say that this explanation was an insufficiently cogent justification on the argument that there was "nothing to lose by introducing these witnesses" since the worst that could happen from their testifying was that "the court could not have found them credible." Br. of Appellant at 44. In fact, not only could the *court* not have found these witnesses credible for purposes of *sentencing*, but the *jury* could have decided that their testimony actually weakened the defense's case against *conviction*. And more important for our purposes is that, unlike what was the case in *Griffin*, these witnesses would have provided no "evidence which in a significant way drew [Terry's] factual guilt in issue," 970 F.2d at 1357, a case in which trial counsel's decision not to call a witness must be more closely scrutinized. Rather, counsel here would have been well within acceptable professional standards if he decided that having convicted

criminals testify on Terry's behalf to challenge the evidence of *prior* drug dealings would do nothing on balance to help Terry's chances for acquittal of the charges for which he was actually being tried.m m

A fundamental reality of trial practice is that "[o]ften, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses." *Epsom* v. *Hall*, 330 F.3d 49, 53 (1st Cir. 2003). Counsel could reasonably have concluded the same as to the testimony that these inmates allegedly would have provided about the jailhouse accusations and contradictions of the inmates that the government chose to call. Put differently, trial counsel's reference to the fact that "these were all people from the jail" can be fairly understood, under the circumstances, to reference more than just the possibility that these witnesses' convictions alone would be used to detract from their credibility. It also could reference the lack of evidence that any of these men knew Terry prior to his arrest for the charged crimes, making it unlikely they could provide substantial aid in trial counsel's preeminent goal of creating reasonable doubt as to the validity of those charges. This is especially true given that trial counsel had already attacked, to his satisfaction, the credibility of the government's witnesses on cross-examination and by calling Terry's girlfriend.

Thus, with trial counsel having presented a defense that he believed was the "best . . . we had available" and that was, from our review of the record, sufficient to allow a jury to acquit, trial counsel could have reasonably believed that the potential benefit of allowing these convicts to rebut Jensen's sentencing evidence was insubstantial because it did not outweigh the potential detriment of their weakening the case for acquittal. At minimum, the evidence is insufficient to overcome the strong presumption that this decision was sound trial strategy.

## CONCLUSION

For these reasons, the judgment of the district court is affirmed.

*AFFIRMED*