**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lamont BOOKARD, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 12, 2009.

Filed July 29, 2009.

Peter A. Levin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, LALLY-GREEN, KLEIN, BOWES, PANELLA, DONOHUE and SHOGAN, JJ.

OPINION BY KLEIN, J.:

¶ 1 Lamont Bookard appeals from an order denying his request for post-conviction relief on the ground that his trial counsel, attorney Susan Burt–Collins, was ineffective for failing to ask for a charge on alibi. We find that counsel articulated a reasonable strategic basis for failing to request such a charge; she had an alternate theory of defense and did not want to cloud the issue by focusing on an alibi defense. Since it was questionable as to whether it was impossible for Bookard to be present to commit the crime, and counsel did not want the jury distracted by that issue, we believe that strategy was reasonable and therefore we affirm the denial of post-conviction relief.

¶ 2 Bookard was convicted of an armed robbery of men playing a dice game on Reno Street in the Mantua section of Philadelphia. The robbery took place on March 23, 2000. A 911 call was placed at 4:19 p.m., and the time of the robbery was between 4:00 p.m. and 4:19 p.m.

less of the Constitution cited, appellee's forced abandonment argument fails.

¶ 3 According to the Commonwealth, Bookard and John Rosser arrived at the game in Rosser's car, and, after the robbery, Rosser was shot and killed while the two were fleeing in Rosser's car. The car crashed within two blocks of the robbery. The Commonwealth alleged that Bookard shot Rosser as the two were fleeing in Rosser's car, that the shooting caused Rosser to crash his car within two blocks of the site of the robbery, and that after the shooting and crash, Bookard fled on foot.

¶ 4 Bookard was charged with the murder, robbery, conspiracy and related offenses. Following a jury trial, he was acquitted of the homicide, but convicted of two counts of robbery and one count each of carrying a firearm on a public street and criminal conspiracy. Trial counsel was not totally successful but obviously was not totally unsuccessful, either.

¶ 5 Bookard later filed a *pro se* PCRA petition claiming trial counsel was ineffective for failing to request an alibi instruction. Ultimately counsel was appointed and there was an evidentiary hearing on the allegation of ineffectiveness. Trial counsel testified at the hearing and on April 26, 2007, the PCRA court entered an order denying post conviction relief.

¶ 6 In order to establish ineffective assistance of counsel, appellant must demonstrate that (1) his claims have arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) counsel's action or inaction prejudiced appellant. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). "The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that the trial counsel's

decision had any reasonable basis." *Commonwealth v. Hawkins*, 586 Pa. 366, 894 A.2d 716, 730 (2006).

¶ 7 At the hearing on Bookard's PCRA petition, trial counsel explained that based on her twenty-four years of experience handling hundreds of major felony cases as a defense attorney, she did not want to classify this case as an alibi case. Counsel instead wanted the jury to focus on the testimony of Marin McClain. Bookard and McClain both testified that Bookard had borrowed McClain's car and Bookard was to pick McClain up at 4:30 p.m. Bookard testified that he, along with his former girl friend, Latonya Coles, did pick McClain up at his job at a warehouse in South Philadelphia at 4:30 p.m. McClain testified that Bookard appeared calm and displayed nothing out of the ordinary when he picked him up. Trial counsel testified that she wanted to focus on Booker's demeanor and appearance when he picked McClain up at 4:35 p.m. She did not want to cloud that testimony.

¶ 8 McClain testified that he was picked up by Bookard at his work at 4:35 p.m., which would be somewhere from 20 to 35 minutes from the time of the crime. While McClain's job is about 8½ miles from the scene of the crime, both the job site and the scene of the crime can easily be reached just off the Schuylkill Expressway in Philadelphia. It certainly was not impossible for Bookard to have traveled that distance in 30 or 35 minutes; in fact, notwithstanding traffic, construction, or accident delays, he could have driven that distance in sixteen minutes.[1] An alibi instruction is required only in cases where a defendant's explanation places him at the relevant time at a different place than the scene involved and so far away as to render it impossible for him to be the guilty

1. http://www.mapquest.com; http://maps. google.com.

party. *Commonwealth v. Kolenda,* 544 Pa. 426, 676 A.2d 1187, 1190 (1996). That was not the case here.

¶ 9 At the PCRA hearing, counsel explained:

> Because I did not feel that he was close enough in terms of contemporaneousness with the time of the crime.... As I recall, I thought it was much farther away and there was some evidence that it was not very far away. That there was a way to get there that was a fairly quick way. You could get from 3800 Reno Street [the scene of the crime] to Lawrence Street [where Bookard worked and McClain picked him up]; and it wasn't going to be you know, a 10 mile drive, and that you wouldn't encounter tons of traffic at 4:30, I think it was a weekday. *So I was concerned that because they weren't close enough in time 4, 4:15, 4:35, and the distance wasn't great enough that I was really going to miss the alibi. I wasn't going to make an alibi and by asking for an alibi instruction, I was going to call attention to the inadequacy of the time match up and draw attention away from the very adequate testimony of Mr. McClain, that Mr. Bookard, when he picked him up was perfectly calm, normal, not upset, not injured, was perfectly fine and didn't look like he had just been involved in a robbery in which somebody died. I thought that was a more valuable focus for the jury to have.*

> *I didn't really want to have to hang it on alibi.*

N.T. PCRA Hearing, 1/18/07, at 25–27 (emphasis added).

¶ 10 Additionally, counsel testified that the Commonwealth had informed her that it had evidence to rebut any alibi testimony. While counsel did not recall the exact evidence since the PCRA hearing was held six years after the trial, she stated that she remembered thinking the evidence would strain McClain's credibility in the eyes of the jury. Counsel testified that McClain's testimony as to Bookard's appearance and demeanor was critical to her case. This is what she wanted to emphasize. Further, because she wanted to keep out the rebuttal evidence, it was her professional opinion that she should not make this an alibi case. *Id.* at 32–33.

¶ 11 Here, the evidence placed Bookard close enough to the scene that, while difficult, it would not have been impossible for him to have been involved in the robbery; no testimony actually placed him in another place at 4:00 p.m. on the date in question. In such a case, no alibi instruction is required.[2] *See Commonwealth v. Johnson,* 538 Pa. 148, 646 A.2d 1170 (1994). *See also Commonwealth v. Hawkins,* 586 Pa. 366, 894 A.2d 716 (2006) (where trial counsel articulated reasonable and sound basis for deliberately declining to seek alibi instruction, Court found trial counsel was not constitutionally ineffective). Counsel's strategy, to focus on McClain's

---

**2.** Following is a model alibi instruction:

In this case, the defendant has presented evidence of an alibi, that is, that [he][she] was not present at the scene or was rather at another location **at the precise time that the crime took place.** You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond reasonable doubt that a crime was committed and that the defen-

dant [himself] [herself] committed [or took part in committing] it. The defendant's evidence that [he][she] was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of [his][her] guilt. If you have a reasonable doubt of the defendant's guilt, you must find [him][her] not guilty. Pa. Suggested Std.Crim. Jury Instr. § 3.11 (emphasis added).

testimony and keep out what might be damaging rebuttal evidence, was a reasonable one. *Pierce, supra.*

¶ 12 Because counsel's explanation and strategy are reasonable, counsel was not ineffective. Therefore, we affirm the denial of post-conviction relief.

¶ 13 Order affirmed.

¶ 14 BOWES, J., concurs in the result.

¶ 15 DONOHUE, J., files a Dissenting Opinion.

DISSENTING OPINION BY DONOHUE, J.:

¶ 1 I respectfully dissent from the Majority's conclusion that counsel for Appellant Lamont Bookard ("Bookard") had a reasonable or strategic basis for failing to request an alibi instruction in this case, as the record on appeal reflects instead that counsel's failure to do so resulted from her misconception that she had failed to produce sufficient evidence to establish an alibi defense. Moreover, counsel's contention that she did not request an alibi instruction because it would have permitted the Commonwealth to respond with rebuttal evidence is also unsupported, as her testimony at the evidentiary hearing on remand suggests that no such rebuttal evidence in fact existed; to the extent she believed otherwise, she misunderstood the nature of the evidence at issue. Accordingly, I would grant Bookard's requested PCRA relief in the form of a new trial, based upon ineffective assistance of counsel.

¶ 2 When evaluating a challenge to the reasonableness of a decision by trial counsel, we must determine whether counsel had "some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Hawkins*, 586 Pa. 366, 389, 894 A.2d 716, 730 (2006). At trial, Book-

ard's counsel presented the following evidence:

- Bookard testified that on March 23, 2000, he had borrowed the automobile of Marvin McClain ("McClain"), who was at work in South Philadelphia. N.T., 5/2/01, at 150–51.
- Bookard further testified that on the afternoon of the 23rd he was at his mother's home (on North Croskey Street in North Philadelphia) along with John Rosser, the victim of the homicide, and LaTonya Coles, his former girlfriend. *Id.* at 154–55. Bookard testified that Tyrone Sydnor came to the home and asked to speak to Rosser. *Id.* at 156. After Rosser and Sydnor talked, Bookard stated that Rosser told him that he (Rosser) was going to rob a craps game, and asked Bookard to join him—but Bookard declined. *Id.* at 156–57.
- According to Bookard's testimony, Rosser left the home at approximately 3:00 p.m. *Id.* at 157. Bookard testified that he remained at his mother's home with Coles prior to leaving to pick up McClain. *Id.* at 159–60. He picked up McClain at approximately 4:30 p.m. *Id.* at 160.
- Ronnicka Davis ("Davis"), who lives on North Croskey Street, testified for the defense that she saw Rosser on the afternoon of May 23, 2000, and that Rosser left the neighborhood in his own vehicle. *Id.* at 181. Davis further testified that she saw Bookard and Coles leave thirty or forty-five minutes after Rosser left. *Id.* at 186. She stated that Bookard and Coles left the neighborhood in a blue car. *Id.* at 187.
- McClain testified that he lent his car, a blue Chevrolet, to Bookard, and that Bookard and Coles picked him up at his South Philadelphia place of em-

ployment at 4:35 p.m. driving his (McClain's) car. *Id.* at 127, 129.

¶ 3 As this summary of the evidence presented on behalf of Bookard makes clear, McClain's testimony regarding Bookard's whereabouts after the crime did not, by itself, establish an alibi. Instead, the alibi defense was established *through Bookard's own testimony that he was in transit from his mother's home to McClain's place of employment at the time of the crimes.*[1] The testimony of Davis and McClain tended to corroborate Bookard's testimony by providing confirmation that he left his mother's house shortly before 4:00 p.m. and arrived at McClain's place of employment just after 4:30 p.m.

¶ 4 At trial, however, Bookard's counsel displayed what can at best be described as general confusion regarding the evidence presented to the jury, as she never requested an alibi instruction and in fact, appeared to deny that any alibi defense even existed. For example, at the outset of McClain's testimony and in the presence of the jury, counsel indicated that McClain was *not* an alibi witness because the crimes occurred 16 minutes before Bookard arrived to pick him up.[2] This assertion was in apparent disregard for Bookard's own testimony that he was in transit from his mother's home at the time of the crimes. At the subsequent jury instruction conference held before the close of the defense's evidence, counsel then failed to request an alibi instruction based upon her apparent misapprehension that she had not presented sufficient evidence for an alibi defense.[3]

¶ 5 This Court clearly recognized counsel's confusion in this regard, as we remanded the case to the trial court for an evidentiary hearing on precisely this issue—namely whether counsel had any reasonable or strategic basis for not requesting an alibi instruction. *Commonwealth v. Bookard,* 909 A.2d 866 (Pa.Super.2006) (unpublished memorandum). In remanding the case to the trial court for an evidentiary hearing, we specifically acknowledged counsel's amorphous and seemingly contradictory explanations at trial for not requesting an alibi instruction, noting that "[r]ather than clarifying whether the defense centered on an alibi defense, [counsel's] remarks acknowledge such a defense, but indicate that for some reason to which we are not privy she decided to abandon that position." *Id.* at *6.

¶ 6 At the evidentiary hearing on remand, counsel's testimony served only to create more confusion on the issue on which we sought clarification. She testi-

---

1.  *See, e.g., Commonwealth v. Roxberry,* 529 Pa. 160, 164–165, 602 A.2d 826, 828 (1992) (emphasizing that (1) "[t]here is no minimum or threshold quantum of physical separation necessary for a defense to constitute an alibi, so long as the separation makes it impossible for the defendant to have committed the crime"; and (2) that an alibi instruction is appropriate even when the "alibi defense had been presented solely by the unsupported testimony of the defendant").

2.  [Counsel for the Commonwealth]: Mr. McClain, when did you learn that you were going to be an alibi witness in this case? [Counsel for Bookard] **Your Honor, if I may, he's not exactly an alibi witness. The time** **of the crime is 4:19. He shows up 4:35, not really an alibi witness.** [The Court] Is that an objection? [Counsel for Bookard] It is, Your Honor. [The Court] Overruled. N.T., 5/2/01, at 132 (emphasis added).

3.  [Counsel for the Commonwealth]: Does counsel want an alibi charge in this matter? There was no— [Counsel for Bookard]: *It's really not.* [Counsel for the Commonwealth]: I want the record to reflect that for the future. [The Court]: She said it's not alibi. So therefore no reason to give an alibi charge. N.T., 5/2/01, at 196 (emphasis added).

fied that presenting an alibi defense would have been problematic because it would have highlighted the possibility that Bookard could have driven to McClain's place of employment from the crime scene and still have committed the crimes, thus distracting the jury from the strength of her defense (i.e., McClain's testimony):

As I recall, I thought it [the site of the robbery] was much further away [from the location where appellant picked up McClain] and there was some evidence that it was not very far away. That there was a way to get there that was a fairly quick way. You could get from 3800 Reno Street to Lawrence Street [in South Philadelphia] and it wasn't going to be, you know, a 10 mile drive, and that you wouldn't encounter tons of traffic at 4:30, I think it was a weekday.[4] I was concerned that because they weren't close enough in time, 4, 4:15, 4:35, and the distance wasn't great enough that I was really going to miss the alibi. I wasn't going to make an alibi and by asking for an alibi instruction, I was going to call attention to the inadequacy of the time match up and draw attention away from, what I thought to be, the very adequate testimony of Mr. McClain, that [appellant], when he picked him up was perfectly calm, normal, not upset, not injured, was perfectly fine and didn't look like he had just been involved in a robbery in which somebody died.

N.T., 1/18/07, pp. 26–27.

¶ 7 From this testimony, the Majority concludes that counsel's decision not to request an alibi instruction and to instead focus on McClain's testimony that Bookard arrived calm and unflustered at his place of employment 15–20 minutes after the crimes were committed was a reasonable strategy. In my view, precisely the opposite is true, since McClain's testimony regarding Bookard's arrival at his place of employment at 4:35 p.m. unquestionably begs the question for the jury: Where was Bookard at the time of the crimes? The evidence presented established that Bookard was at his mother's house until he left with his former girlfriend in a blue car to pick up McClain, and that as a result he had an alibi[5]—namely that he was in tran-

---

4.  In its footnote # 1, the Majority cites to two mapping websites in support of its contention that McClain's place of employment was eight and one half miles from the scene of the crimes—by way of the Schuylkill Expressway in Philadelphia. Majority Opinion at 1007–08. The Majority further contends that "it was certainly not impossible for Bookard to have traveled that distance in 30 or 35 minutes; in fact, notwithstanding traffic, construction, or accident delays, he could have driven that distance in sixteen minutes." *Id.* My review of the record has not disclosed any reference to specific distances or approximate driving times between McClain's place of employment and the scene of the crimes. Likewise, the record does not appear to include any references to either www.mapquest.com or www.maps.google.com. In deciding issues on appeal, this Court must resolve them based solely upon the basis of facts that were before the lower court when it rendered its decision and subsequently contained in the record on appeal. *See, e.g., Commonwealth v. Rainey,* 593 Pa. 67, 99 n. 20, 928 A.2d 215, 235 n. 20 (2007); *Kozura v. Tulpehocken Area School Dist.,* 568 Pa. 64, 73 n. 9, 791 A.2d 1169, 1173 n. 9 (2002); *Commonwealth v. Foster,* 764 A.2d 1076, 1084 n. 3 (Pa.Super.2000), *appeal denied,* 566 Pa. 658, 782 A.2d 542 (2001). Moreover, without specific reference to traffic conditions on the date and time of the events in question, internet mapping results are totally speculative. One traffic accident or any construction activity renders the time estimates useless.

5.  Counsel's testimony at the evidentiary hearing on remand is abundantly clear that Bookard's explanation of his whereabouts at the time of the crimes was not part of her analysis in deciding to forego an alibi defense:

Q.  Now, getting back to the facts of the crime. Do you know, was your defense in

sit (in a *blue* vehicle) from his mother's home to McClain's place of employment at the time of the crimes which were, according to the Commonwealth, perpetrated by two male occupants of a *black* vehicle. N.T., 5/1/01, at 126–27. Bookard was entitled to an alibi instruction, as the jury should have been given a structured opportunity, via an alibi instruction, to find that Bookard was at home and then in transit, and that this was the reason that he arrived at McClain's place of employment calm and unflustered at 4:35 p.m.

¶ 8 Instead, at the evidentiary hearing counsel testified to a strategy predicated upon her continuing misconception that (1) she had failed to produce sufficient evidence to establish an alibi defense, and (2) that Bookard's defense depended entirely on McClain's testimony, which it clearly did not. As such, I discern no basis in the record to conclude that counsel made a *conscious decision* to decline to seek an alibi instruction based upon a reasoned evaluation of her concerns. Nothing in the record on appeal supports counsel's suggestion that requesting an alibi instruction would have drawn the jury's attention away from McClain's testimony, since McClain's testimony that Bookard arrived calm and unflustered at his place of em-

ployment does not in any way contradict Bookard's testimony that he was in transit at the time of the crimes.[6] To the contrary, the jury was certainly capable of understanding that the components of the defense were entirely complementary: (1) Bookard was elsewhere at the time of the crime (i.e., in transit from his mother's home to pick up McClain), and (2) his calm demeanor upon arrival to pick up McClain just minutes after the crimes occurred showed that he had not just been involved in a robbery or murder. To the extent that counsel's strategy assumed to the contrary, it was unreasonable.

¶ 9 At the evidentiary hearing on remand, counsel testified to a second strategic reason for not requesting an alibi instruction—she did not want to characterize her defense as an alibi defense because it would have permitted the Commonwealth to present rebuttal evidence. N.T., 1/18/07, at 32. Initially she claimed that she could not recall the specific nature of the rebuttal evidence, but when pressed to remember she identified McClain's time card indicating that he may have left work at 3:23 p.m.—more than an hour before he testified that Bookard picked him up. N.T., 1/18/07, at 32–33, 39–40. The time card in question, however, plainly estab-

this case, did you present an alibi defense in this case?

A. That, I did not present what I termed an "alibi defense." I presented evidence that around the time, although not the exact time, but around the time of the crime or 15 to 20 minutes after the crime, the robbery, that my client was picking up a friend of his, Mr. McClain, who was also a friend of the deceased, at the place where Mr. McClain worked.

N.T., 1/18/07, at 17–18.

**6.** In addition, a conscious decision on counsel's part to decline an alibi instruction would have required her to disregard the particularly damaging consequences to Bookard's defense from such a strategy. Our Supreme

Court has instructed that where there is sufficient evidence in the record to establish an alibi defense, the defendant is clearly entitled to an alibi instruction for at least two reasons: (1) "an alibi defense, either standing alone or together with other evidence, may be sufficient to leave in the minds of the jury a reasonable doubt that might not otherwise exist," and (2) to "alleviate the danger that the jurors might impermissibly view a failure to prove the defense as a sign of defendant's guilt." *Commonwealth v. Mikell*, 556 Pa. 509, 517, 729 A.2d 566, 570 (1999). The latter concern is of particular significance here because the only apparent reason for calling Bookard to testify on his own behalf was to set up the alibi defense.

lished that McClain left work at 4:20 p.m., and the notation "3:23" on the card referred not to the time McClain left work, but rather to the relevant date of March 23 (the date of the crimes in question). Counsel's apparent concern over this time card as rebuttal evidence did not, therefore, establish any reasonable basis for her failure to request an alibi instruction. Moreover, since McClain's time card had already been introduced at trial and since counsel for Bookard and the Commonwealth both questioned McClain regarding its contents during his testimony, N.T., 5/2/01, *id.* at 128, 140, the time card was already in evidence and thus would not have been rebuttal evidence. Therefore, this explanation (i.e., fear of rebuttal evidence) does not establish any reasonable or strategic basis for failing to request an alibi instruction.

¶ 10 In its written opinion that we are reviewing on this appeal, prepared subsequent to the evidentiary hearing on remand, the learned trial court implicitly acknowledged what the Majority here refuses to do—that counsel's testimony at the evidentiary hearing provided no reasonable basis for her failure to request an alibi instruction, and that Bookard's testimony, corroborated by that of other defense witnesses, created the alibi. To find a reasonable basis for counsel's conduct, the trial court went back to the trial transcript, recognized Bookard's alibi testimony, and skillfully identified potential rebuttal evidence never referenced at the evidentiary hearing on remand. Specifically, the trial court pointed out that the

victim's mother Glenda Birke ("Birke") testified in the Commonwealth's case that Bookard told her that he could not have killed her son because he was at work at the time of the killing (i.e., on March 23 at around 4:15 p.m.). Trial Court Opinion, 7/16/07, at 4 (citing N.T., 5/2/01, at 54–56). Birke further testified that two other individuals (her son Norman and Bookard's cousin Rasheed West) heard Bookard make this statement.[7] *Id.* Birke's testimony was apparently offered in anticipation of and in contradiction to Bookard's alibi defense which Bookard's counsel later developed in the defense case. In its written opinion, the trial court indicates that the Commonwealth could have, but did not, call either Birke's son Norman or Rasheed West as rebuttal witnesses to contradict Bookard's "in transit" testimony.[8] Trial Court Opinion, 7/16/07, at 4.

¶ 11 Nothing in the record on appeal, however, proves (or even suggests) that counsel ever even recognized that the evidence supported an alibi, let alone that counsel considered the possible rebuttal testimony of Birke's son Norman or Rasheed West in deciding not to request an alibi instruction. Counsel did not articulate this rationale as a basis for her decision, either at trial or the evidentiary hearing on remand, and thus there is no basis on this record to conclude that counsel *in fact* had the strategy the trial court generated from the trial transcript. In my view, it is likely that an experienced trial judge could review the record in most cases and, in retrospect, concoct a theory as to why

---

7. The Commonwealth also called Vincent Marsico ("Marsico"), the human resource manager at Bookard's prior employer, in its case-in-chief to disprove the suggestion that Bookard was at work on March 23. Marsico testified that Bookard's employment had lasted only a single day—March 22, and thus he was not at work on March 23. N.T., 5/2/01, at 92.

8. One may question whether these witnesses would have been or should have been allowed to testify in rebuttal, since their testimony merely corroborated Birke's testimony already offered in the Commonwealth's case-in-chief and therefore was arguably cumulative and repetitive.

decisions by counsel were made, *e.g.*, a foregone piece of documentary evidence was (probably) more confusing than helpful; the abandoned witness' credibility was (probably) too easily impeached. The inquiry on a Sixth Amendment claim of ineffective assistance of counsel, however, must forego "the distorting effects of hindsight" and instead be based solely upon the actual strategic decisions of trial counsel. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("A fair assessment of attorney performance requires ... [the court to] evaluate the conduct from counsel's perspective at the time."); *Kimmelman v. Morrison,* 477 U.S. 365, 386–387, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (hindsight cannot be used to supply a reasonable reason for the decisions of counsel); *Commonwealth v. Marshall,* 534 Pa. 488, 505–06, 633 A.2d 1100, 1108 (1993) ("We find that counsel's answers [at the PCRA evidentiary hearing] demonstrate that he did not have a reasonable basis to effectuate appellant's interests."). As one federal court has described it, "courts should not conjure up tactical decisions an attorney could have made, but plainly did not.... Tolerance of tactical miscalcula-

tions is one thing; fabrication of tactical excuses is quite another." *Griffin v. Warden,* 970 F.2d 1355, 1358–59 (4th Cir.1992); *see also Harris v. Reed,* 894 F.2d 871, 878 (7th Cir.1990) ("Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer.").

¶ 12 Because I view the record as establishing counsel's clear misunderstanding of the evidence and the requisites of an alibi defense, I believe the trial court erred in finding that counsel possessed a reasonable strategic basis for her failure to request an alibi instruction.[9] Consequently, it is necessary to proceed to consider whether the failure to request an alibi instruction was sufficiently prejudicial to warrant relief under the PCRA. Here, counsel's unexplained failure to request an alibi instruction left the jury without proper guidance to consider the totality of the evidence, and essentially deprived appellant of a defense firmly established by the evidence presented at trial. *See, e.g., Mikell,* 556 Pa. at 518, 729 A.2d at 570–571; *Roxberry,* 529 Pa. at 166, 602 A.2d at 829. Therefore, I am compelled to conclude that

---

9. The Commonwealth argues that counsel's decision to forgo an alibi instruction was reasonable under the guidance provided by the Supreme Court in *Commonwealth v. Hawkins,* 586 Pa. 366, 894 A.2d 716 (2006). In *Hawkins,* the Supreme Court found that there was a "detailed record ... of trial counsel's rationale for *consciously declining* to seek the instruction," and held that counsel's explanation expressed "a reasonable basis for declining, as a tactical matter, to avail himself of a particular jury instruction to which his client unequivocally was entitled." *Id.,* 586 Pa. at 390–391, 894 A.2d at 730 (emphasis supplied). Specifically, the Court noted:

> [C]ounsel explained that in his twenty years of experience he had come to the conclusion that where alibi testimony is weak, or is predicated on the defendant's testimony alone, calling attention to that testimony

explicitly as alibi evidence disserves the defendant's interests. Notably, he did not suggest that such testimony itself serves no purpose, nor did he suggest that counsel should not highlight alibi evidence for the jury in closing. He simply expressed his discomfort, under the circumstances at bar, with the expectations a specific alibi instruction might raise in the minds of the venire, and explained that it was his practice to avoid disappointing such expectations where possible.

*Id.,* 586 Pa. at 390, 894 A.2d at 730.

While it was evident in *Hawkins* that defense counsel had carefully considered possible costs and benefits of the instruction in light of the evidence presented at trial, the record on appeal in this case, as explained hereinabove, does not reflect the same consideration.

counsel's omission constituted constitutionally ineffective assistance of counsel, upon which appellant is entitled to post conviction relief.

¶ 13 Accordingly, I dissent from the decision of the Majority and would reverse the order denying post conviction relief and remand this case for a new trial.